IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CAROLYNN WOOD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:23-cv-1114-CCE-JLW |
| FKH SFR C1, L.P., f/k/a CERBERUS SFR HOLDINGS II, L.P.; FIRSTKEY HOMES, LLC; FIRSTKEY HOMES OF NORTH CAROLINA, LLC; MICHELLE HARNE; SCOTT SANDMAN; AND CHRIS WOODHOUSE, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF
PARTIAL MOTION TO DISMISS UNDER RULE 12(b)(6)**

Defendants FKH SFR C1, L.P., f/k/a Cerberus SFR Holdings II, L.P.; FirstKey Homes, LLC; FirstKey Homes of North Carolina, LLC; Michelle Harne; Scott Sandman; and Chris Woodhouse (collectively, "FirstKey" or "Defendants"), by and through the undersigned counsel, respectfully submit this brief in support of their Partial Motion to Dismiss Under Rule 12(b)(6).

**I.  NATURE OF THE MATTER BEFORE THE COURT**

In this lawsuit, Plaintiff Carolyn Wood ("Wood" or "Plaintiff") alleges that she signed an eighteen-month residential lease and sought to terminate the lease early after she and her husband could no longer take the stairs to the home's second floor. *See* Compl. ¶¶

34, 38–41.* Wood alleges that Defendants responded by insisting that she comply with the lease's termination provisions (which, among other things, required 60 days' notice). *See* Compl. ¶ 49.

Wood does *not* claim that this response breached the parties' lease. Instead, her Complaint raises claims under the federal Fair Housing Act, the North Carolina Fair Housing Act, and the North Carolina Uniform Deceptive Trade Practices Act ("UDTPA")—all of which are premised on FirstKey's insistence on compliance with the lease's termination provisions. *See* Compl. ¶¶ 78–89.

As shown below, the Court should dismiss the UDTPA claim because the Complaint fails to adequately allege an unfair or deceptive act or practice. *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 588 (E.D.N.C. 2020) (dismissing UDTPA claim on this ground); *Noble v. Hooters of Greenville (NC), LLC*, 681 S.E.2d 448, 455 (N.C. Ct. App. 2009) (same).

## II. STATEMENT OF FACTS

Wood and her husband, Tommy Wood, leased a home at 160 Rhyne Court, Clemmons, North Carolina from FirstKey on February 17, 2021. Compl. ¶¶ 4, 9. The home had two levels—a lower level accessible via an exterior door and interior foyer, and an upper level accessible via exterior and interior stairs. Compl. ¶¶ 36–37. The lease "was set to expire on June 16, 2022." Compl. ¶ 34.

---

* The facts described herein are taken from the allegations in the Complaint [Doc. 1].

Wood alleges that she and her husband were "able to use the stairs and access this [upper] level at the start of their tenancy." Compl. ¶ 37. She further alleges, however, that sometime after "September 2021," her and her husbands' alleged disabilities became worse such that "neither of them could safely carry items up the stairs and they became largely restricted to the ground floor." Compl. ¶39. In turn, in December 2021 the Woods requested FirstKey to allow them "to terminate their lease early." Compl. ¶ 41. Wood alleges that FirstKey denied this request with the explanation that the lease "required 60-days' notice to terminate the lease" and payment of an early-termination fee. Compl. ¶¶ 49, 59.

Claiming that FirstKey's insistence on compliance with the lease's terms constituted a violation of the federal Fair Housing Act and the North Carolina Fair Housing Act, Wood filed an administrative fair housing complaint with the North Carolina Human Relations Commission. Compl. ¶ 61. And on September 8, 2022, the Commission "found there was not reasonable cause to find that discrimination had occurred." Compl.¶ 63.

Wood has now filed this lawsuit, which reiterates her theories under the federal Fair Housing Act and the North Carolina Fair Housing Act and adds a claim under the UDTPA. Compl. ¶¶ 78–89. The UDTPA claim is premised on the same conduct as the fair-housing claims and relies on the alleged violation of the fair-housing statutes to allege the existence of an unfair or deceptive act or practice under the UDTPA. Relying on the notion that a "practice is unfair when it offends established public policy," *Walker v. Fleetwood Homes of N. Carolina, Inc.*, 653 S.E.2d 393, 399 (N.C. 2007), Wood premises her UDTPA claim

3

on the allegation that FirstKey violated "the established public policy of North Carolina which mandates that landlords shall not discriminate against person in the leasing of a dwelling because of disability," Compl. ¶ 87.

## III. STANDARD OF REVIEW

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint," and ensures "that plaintiffs may proceed into the litigation process only when their complaints are justified by both law and fact." *Francis v. Giacomelli*, 588 F.3d 186, 192–93 (4th Cir. 2009) Because "a formulaic recitation of the elements of a cause of action will not do," courts disregard "naked assertions' of wrongdoing"—"such unadorned conclusory allegations … are not entitled to the assumption of truth." *Id.* at 193 (quotation marks and citations omitted). And dismissal is required where the remaining, non-conclusory allegations do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief *that is plausible on its face.*'" *Id.* at 193 (emphasis added by *Francis*; quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## IV. ARGUMENT

North Carolina's UDTPA prohibits "unfair or deceptive acts or practices in or affecting commerce," N.C. Gen. Stat. § 75-1.1, and provides a private treble-damages cause of action to any person injured by a violation of this prohibition, N.C. Gen. Stat. § 75-16. In accordance with the statutory text, the North Carolina Supreme Court has long held that "to establish a violation of N.C.G.S. § 75-1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately

4

Case 1:23-cv-01114-CCE-JLW    Document 20    Filed 02/21/24    Page 4 of 12

caused injury to plaintiffs." *Walker v. Fleetwood Homes of North Carolina, Inc.*, 653 S.E.2d 393, 399 (N.C. 2007) (quotation marks and citation omitted). Wood's UDTPA claim fails on the first element, for she fails to adequately allege conduct that constitutes an unfair or deceptive act or practice under the UDTPA.

Both the North Carolina Supreme Court and federal courts have recognized that "[w]hether conduct by a defendant constitutes an unfair or deceptive act or practice is a question of law for determination by the court." *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 588 (E.D.N.C. 2020) (citing *Walker*, 653 S.E.2d at 399). Because it is plainly not "deceptive" to insist on compliance with a lease's termination terms, Wood's UDTPA claim turns on whether FirstKey's conduct was "unfair." And Wood's claim fails because FirstKey's conduct is neither a *per se* UDTPA violation nor otherwise unfair.

### A. Wood has failed to allege a *per se* UDTPA violation

Under North Carolina law, "a regulatory violation *may* offend N.C.G.S. § 75–1.1" as "a matter of law." *Walker*, 653 S.E.2d at 398–99. This appears to be Woods' theory—that FirstKey's refusal to allow her to terminate her lease early (without the requisite 60-day notice and without the early-termination fee) violated federal and North Carolina fair-housing statutes and thus automatically also violated the UDTPA. *See* Compl. ¶¶ 66, 87 (alleging this conduct and "offend[ed] the established public policy of North Carolina"). The North Carolina Supreme Court, however, has been clear that a regulatory "violation *does not automatically result in an unfair or deceptive trade practice*." *Walker*, 653 S.E.2d at 398 (emphasis added).

5

Case 1:23-cv-01114-CCE-JLW    Document 20    Filed 02/21/24    Page 5 of 12

Instead, whether a violation of a regulatory statute can serve as a UDTPA predicate turns on whether the "statute at issue defined in detail … unfair and deceptive acts or practices in the ... industry, thereby establishing the General Assembly's intent to equate a violation of that statute with the more general provision of § 75-1.1." *Walker*, 653 S.E.2d at 399; *see also Cross*, 438 F. Supp. 3d at 586 (quoting *Walker* for this point). As the North Carolina Court of Appeals has explained in the course of rejecting a UDTPA claim premised on violations of state laws regulating alcoholic beverages, "violations of certain regulatory statutes are *per se* violations" of the UDTPA "*only* where the regulatory statute *specifically* defines and proscribes conduct which is unfair or deceptive within the meaning of N.C. Gen. Stat. § 75–1.1.3." *Noble v. Hooters of Greenville (NC), LLC*, 681 S.E.2d 448, 454 (N.C. Ct. App. 2009) (first emphasis added; footnote and citations omitted).

Indeed, the U.S. District Court for the Eastern District of North Carolina recently rejected a UDTPA claim premised on a federal HIPAA violation because there is no "recognition under North Carolina law that [HIPAA] proscribe[s] conduct that is unfair, deceptive, and injurious to well-being of the consuming public" within the meaning of the UDTPA. *Cross*, 438 F. Supp. 3d at 587. The decision is instructive and worth considering in detail.

First, the *Cross* court noted that, under *Noble*, "a violation of a statute or regulation does not constitute a *per se* UDTPA violation unless the statute or regulation 'specifically designate[s] that a violation … is also a violation of [the UDTPA]' or 'specifically defines and proscribes conduct which is unfair or deceptive within the meaning of the UDTPA.'"

6

438 F. Supp. 3d at 586 (quoting *Noble*, 681 S.E.2d at 454). Because HIPAA does neither, the court held that a HIPAA violation is not "a proper predicate for a UDTPA claim." *Id.*

Second, the *Cross* court contrasted its case with *Stanley v. Moore*, 454 S.E.2d 225 (N.C. 1995), which held that violations of a North Carolina landlord-tenant statute can serve as predicates for UDTPA claims. It observed that *Stanley* "expressly noted that North Carolina law had already recognized that 'a landlord's trespass upon the leased premises, eviction of the tenant without resort to judicial process, and conversion of the tenant's personal property *constituted unfair or deceptive acts or practices in commerce within the meaning of N.C.G.S. § 75–1.1.*'" 438 F. Supp. 3d at 587 (emphasis added by *Cross*; quoting *Stanley*, 454 S.E.2d at 228). The *Cross* court also pointed out that *Stanley* emphasized that the landlord-tenant statute expressly provided that its "remedies … are *supplementary to all existing common-law and statutory rights and remedies*." *Stanley*, 454 S.E.2d at 227–28 (emphasis in original; quoting N.C. Gen. Stat. § 42-25.9(c)); *see also Cross*, 438 F. Supp. 3d at 587 (quoting *Stanley*). HIPAA, in contrast, includes neither an express reservation-of-remedies provision nor any language deeming such violations "unfair" under the UDTPA. *Id.* Accordingly, a HIPAA violation "is not an unfair and deceptive act under the meaning of the UDTPA." *Id.* at 588.

Third, the *Cross* court noted that the "North Carolina Supreme Court has not indicated that it would find a violation of [HIPAA] … to be a valid predicate for a UDTPA claim." *Id.* at 586. "Absent such indication" the *Cross* court would "not undertake to expand North Carolina law to recognize such a claim." *Id.*

7

These principles confirm that violations of the federal and North Carolina fair-housing statutes—like violations of the statutes in *Noble* and *Cross*—do not constitute *per se* violations of the UDTPA. Neither the federal Fair Housing Act nor the North Carolina Fair Housing Act contains an express reservation-of-remedies provision. *See* 42 U.S.C. §§ 3604, 3613; N.C. Gen. Stat. §§ 41A-4, 41A-7. And neither statute contains any language deeming violations of their provisions "unfair" under the UDTPA. *See* 42 U.S.C. § 3604(f)(3)(B) (providing that a "refusal to make reasonable accommodations" is "unlawful"); N.C. Gen. Stat. § 41A-4(f)(2) (providing that a refusal "to make reasonable accommodations" is "an unlawful discriminatory housing practice"); *cf.* Compl. ¶¶ 66–70 (invoking these provisions of the federal and North Carolina fair-housing statutes).

There is thus no evidence "'establishing the [legislative] intent to equate a violation of th[ese] statute[s] with the more general provision of § 75-1.1.'" *Cross*, 438 F. Supp. 3d at 586 (first alteration in original; quoting *Walker*, 653 S.E.2d at 399). After all, both the federal Fair Housing Act and the North Carolina Fair Housing Act contain private causes of action, but *neither authorizes treble damages*. *See* 42 U.S.C. § 3613(c); N.C. Gen. Stat. § 41A-7(j). Permitting plaintiffs to nevertheless pursue treble damages for fair-housing violations by simply affixing a UDTPA label to their claims would undermine—not vindicate—legislative intent. *Cf. Noble*, 681 S.E.2d at 455 (refusing to allow plaintiffs to use UDTPA claim to evade "defenses based on contributory negligence" that would apply to parallel negligence claims).

8

For these reasons, Wood's Complaint does not allege a *per se* violation of the UDTPA.

### B. Wood has failed to allege that FirstKey's conduct was otherwise "unfair"

Finally, because Wood cannot rely on a *per se* UDTPA violation, her claim can survive dismissal only if she adequately "allege[d] actions which constitute … an unfair or deceptive act or practice." *Noble*, 681 S.E.2d at 455 (quotation marks and citation omitted). She has not done so. "'North Carolina law requires a showing of substantial aggravating circumstances to support a claim' under the UDTPA." *Cross*, 438 F. Supp. 3d at 583 (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998)). And the alleged conduct here merely consists of a failure to accommodate—in particular, declining to forego FirstKey's contractual rights to 60 days' notice and an early-termination fee. Compl. ¶¶ 49, 59. There is nothing "unfair" about that.

Indeed, North Carolina courts have held that not even an "'*intentional breach of contract* … constitutes a violation of [the UDTPA].'" *Walker*, 653 S.E.2d at 399 (quoting *Mitchell v. Linville*, 557 S.E.2d 620, 623 (N.C. Ct. App. 2001)); *see also, e.g., Broussard*, 155 F.3d at 347 ("[T]o keep control of the extraordinary damages authorized by the UTPA, North Carolina courts have repeatedly held that 'a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UTPA,] N.C.G.S. § 75–1.1.'" (quoting *Branch Banking & Trust Co. v. Thompson*, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992)). *A fortiori*, FirstKey's alleged insistence that Wood *comply* with

9

the lease does not come close to the degree of egregious unfairness necessary to support a claim under the UDTPA.

V. **CONCLUSION**

For these reasons, the Court should dismiss Wood's UDTPA claim for failure to state a claim.

Respectfully submitted, this the 21st day of February, 2024.

*/s/ John M. Moye*
John M. Moye (NC Bar No. 35463)
BARNES & THORNBURG LLP
3340 Peachtree Road, N.E., Suite 2900
Atlanta, Georgia 30326-1092
Tel: (404) 846-1693
Fax: (404) 264-4033
JMoye@btlaw.com

*Local Civil Rule 83.1(d) Counsel for Defendants*

Michael P. Palmer (*by Special Appearance*)
BARNES & THORNBURG LLP
201 South Main Street, Suite 400
South Bend, IN 46601
Telephone: (574) 237-1135
Facsimile: (574) 237-1125
Michael.Palmer@btlaw.com

*Counsel for Defendants FKH SFR C1, L.P., f/k/a Cerberus SFR Holdings II, L.P.; FirstKey Homes, LLC; FirstKey Homes of North Carolina, LLC; Michelle Harne; Scott Sandman; and Chris Woodhouse*

10

# **CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.3, I hereby certify that the foregoing brief complies with the word limit set forth in Local Rule 7.3(d)(1).

*/s/ John M. Moye*
John M. Moye (NC Bar No. 35463)
BARNES & THORNBURG LLP
3340 Peachtree Road, N.E., Suite 2900
Atlanta, Georgia 30326-1092
Tel: (404) 846-1693
Fax: (404) 264-4033
JMoye@btlaw.com

*Local Civil Rule 83.1(d) Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 21st, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

>Peter H. Gilbert — peterg@legalaidnc.org
>Kelly Anne Clarke — kellyc@legalaidnc.org
>Michael Manset — michaelm2@legalaidnc.org
>LEGAL AID OF NORTH CAROLINA, INC.
>FAIR HOUSING PROJECT
>2101 Angier Avenue, Suite 300
>Durham, NC  27703

>*/s/ John M. Moye*
>John M. Moye