# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

## NO. 1:23-CV-1114

| | | |
|---|---|---|
| CAROLYNN WOOD, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | **AMENDED COMPLAINT** |
| | ) | **and JURY REQUEST** |
| | ) | |
| FKH SFR C1, L.P., f/k/a CERBERUS SFR | ) | |
| HOLDINGS II, L.P.; FIRSTKEY | ) | |
| HOMES, LLC; FIRSTKEY HOMES | ) | |
| OF NORTH CAROLINA, LLC; | ) | |
| MICHELLE HARNE; SCOTT | ) | |
| SANDMAN; AND CHRIS | ) | |
| WOODHOUSE, | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

COMES NOW, Plaintiff Carolynn Wood, by and through her undersigned counsel, and files this Complaint against Defendants FKH SFR C1, L.P., formerly known as Cerberus SFR Holdings II, L.P.; FirstKey Homes, LLC; FirstKey Homes of North Carolina, LLC; Michelle Harne; Scott Sandman; and Chris Woodhouse (collectively hereafter "Defendants") and states as follows:

1

## NATURE OF THE ACTION

1.     This is a civil action brought pursuant to the federal Fair Housing Act ("FHA") for monetary, declaratory, injunctive, and other relief arising from unlawful discrimination by Defendants against Plaintiff Carolynn Wood and her husband, Tommy Wood, both persons with a disability. Defendants violated the FHA by refusing to make a reasonable accommodation to their rules, policies, practices, and/or services when such an accommodation is necessary to afford Plaintiff Carolynn Wood and her husband an equal opportunity to use and enjoy their dwelling. Plaintiff Carolynn Wood also asserts the state law claims pursuant to the North Carolina Fair Housing Act, N.C. Gen. Stat. § 41A-1 *et seq.*, and for illegal unfair or deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1 *et seq.*

## JURISDICTION AND VENUE

2.     The Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 3613, because this lawsuit is brought under the FHA, 42 U.S.C. § 3601 *et seq.* This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiff's state law claims because these claims relate to Plaintiff's federal law claim and arise out of a common nucleus of related facts, forming part of the same case or controversy under Article III of the United States Constitution.

2

3. Venue is proper in the Middle District of North Carolina under 28 U.S.C. § 1391(b) because the claim arose in this judicial district.

## PARTIES

4. Plaintiff Carolynn Wood is currently a resident of Calhoun County, Alabama. From February 2021 until February of 2022, she was a resident at the Subject Property located at 160 Rhyne Court, Clemmons, Davidson County, North Carolina.

5. The Subject Property is considered a "dwelling" within the meaning of 42 U.S.C. § 3602(b).

6. Plaintiff Carolynn Wood is an individual with a disability[1], as defined by 42 U.S.C. § 3602 and N.C. Gen. Stat. § 41A-3(3a), that qualifies her for the protections of the federal Fair Housing Act and North Carolina Fair Housing Act. Mrs. Wood has a history of having these disabilities.

7. Plaintiff's husband Tommy Wood is an individual with a disability, as defined by 42 U.S.C. § 3602 and N.C. Gen. Stat. § 41A-3(3a), that qualifies Plaintiff

---

[1] The term "disability" and "disabled" are used throughout this complaint and are understood to have the same meaning as "handicap" and "handicapped" in the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq*. and the State Fair Housing Act., N.C. Gen. Stat. § 41A-1 *et seq*.

3

Carolynn Wood for the protections of the federal Fair Housing Act and North Carolina Fair Housing Act. Mr. Wood has a history of having these disabilities.

8.     At all times relevant herein, Plaintiff is an "aggrieved person" pursuant to 42 U.S.C. § 3602(i).

9.     Plaintiff Carolynn Wood and her husband Tommy Wood leased the Subject Property on or about February 17, 2021, from Defendant FirstKey Homes of North Carolina, LLC as the property manager and agent for the owner, Defendant FKH SFR C1, L.P., formerly known as Cerberus SFR Holdings II, L.P.

10.    Cerberus SFR Holdings II, L.P. executed a deed on or about July 15, 2021, transferring ownership to Defendant FKH SFR C1, L.P. who currently owns the property.

11.    On information and belief, Cerberus SFR Holdings II, L.P. and Defendant FKH SFR C1, L.P. are the same corporation operating with a new name.

12.    On information and belief, "FKH SFR" is an acronym for "First Key Homes Single Family Residences."

13.    Defendant FirstKey Homes of North Carolina, LLC and/or Defendant FirstKey Homes, LLC, were hired by and acted as an agent of Defendant FKH SFR C1, L.P. formerly known as Cerberus SFR Holdings II, L.P. to manage the Subject Property.

4

14.     Defendants Michelle Harne, Scott Sandman, and Chris Woodhouse were employed by Defendant FirstKey Homes, LLC and/or FirstKey Homes of North Carolina, LLC during the lease and participated in management of the Subject Property and related tenant accounts.

15.     Defendant FirstKey Homes, LLC, signed several pieces of correspondence to Plaintiff on behalf of Defendants, regarding Plaintiff's reasonable accommodation request.

16.     Defendant FirstKey Homes of North Carolina, LLC is listed as the property manager on the lease.

17.     On information and belief, Defendants own and/or manage hundreds of properties across the United States. As of the date of this complaint, dozens of homes were listed as currently available to rent on FirstKey's website in North Carolina alone.[2]

18.     As further described below, each Defendant is directly, vicariously, jointly and severally liable for the misconduct of each Defendant, including for the injuries sustained by Plaintiff Carolynn Wood.

---

[2] https://www.firstkeyhomes.com/rental-homes/

## STATUTORY AND REGULATORY BACKGROUND

19.     In 1988, Congress passed the federal Fair Housing Amendments Act of 1988, which made it unlawful "[t]o discriminate in the sale or rental, or otherwise to make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). It is also unlawful "[t]o discriminate against any person in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2). Discrimination includes "a refusal to make reasonable accommodations in rules, polices, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

20.     The North Carolina Fair Housing Act ("North Carolina FHA"), N.C. Gen. Stat. § 41A-1 *et seq.*, continues to be certified by the United States Department of Housing and Urban Development ("HUD") as "substantially equivalent" to the federal FHA, and similarly prohibits discrimination because of handicap or disability and it also requires housing providers to make reasonable accommodations necessary to afford a person with a disability the equal opportunity to use and enjoy their housing. N.C. Gen. Stat. § 41A-4.

Case 1:23-cv-01114-CCE-JLW     Document 24     Filed 03/12/24     Page 6 of 30

21.    "It is beyond cavil that the manner in which a rental agreement can be terminated constitutes a term, condition, or privilege of the rental agreement itself." *Samuelson v. Mid-Atlantic Realty Co.*, 947 F. Supp. 756, 761 (D. Del. 1996).

22.    Allowing a tenant to terminate their lease early without charging fees due to disability is a common reasonable accommodation. *See, e.g.*, *Samuelson*, 947 F. Supp. at 761; *Hughes v. Bransfield*, 84 Va. Cir. 214 (Cir. Ct. 2012).

23.    HUD prescribes a process for a landlord to consider a reasonable accommodation request. *See* HUD, *Information for Housing Providers, Landlords, and Property Managers, What Happens Once You Receive a Request for a Reasonable Accommodation or Reasonable Modification* (hereinafter "HUD Information to Housing Providers"), https://www.hud.gov/program_offices/fair_housing_equal_opp/reasonable_accom modations_and_modifications/information_for_housing_providers_landlords_prop erty_managers#processing-requests (last visited December 12, 2023).

24.    "***Only*** if housing providers, landlords, and property managers believe they cannot provide what an individual has asked for because it would be an undue administrative and financial burden or a fundamental alteration to their program, can [they] suggest alternative accommodations." *Id.* (*emphasis added*).

25.     Landlords "are required to talk with the requestor about the different options if [they] cannot provide the specific accommodation requested, this is called the 'interactive process.'" *Id.*

26.     The Joint Statement from HUD and the United States Department of Justice ("DOJ") on Reasonable Accommodations ("Joint Statement on Reasonable Accommodations") also makes clear that "a reasonable accommodation may be denied *if* providing the accommodation is not reasonable – i.e., if it would impose an undue financial and administrative burden or it would fundamentally alter the nature of the provider's operations." Only after the showing of that burden, that the accommodation is not reasonable, does this Joint Statement contemplate the interactive process for alternative accommodations. (HUD-DOJ Joint Statement on Reasonable Accommodations, May 17, 2004, pp. 7-9, https://www.hud.gov/sites/documents/huddojstatement.pdf (last visited December 12, 2023) (*emphasis added*).

27.     As further set out by HUD, "[i]ndividuals with disabilities are not required to accept an alternative if it will not work for them, and individuals with disabilities are in the best position to know what will and will not meet their specific disability-related needs." HUD Information for Housing Providers; *see also*, Joint Statement on Reasonable Accommodations, p. 8 ("However, providers should be aware that persons with disabilities typically have the most accurate knowledge about the

8

functional limitations posed by their disability, and an individual is not obligated to accept an alternative accommodation suggested by the provider if she believes it will not meet her needs and her preferred accommodation is reasonable.").

## **FACTUAL ALLEGATIONS**

28. Plaintiff Carolynn Wood is a qualified person with a disability who has been deemed disabled by the Social Security Administration (SSA) and has a one hundred percent (100%) disability rating from the United States Department of Veterans Affairs (VA).

29. Plaintiff Carolynn Wood suffers from physical impairments that substantially limit one or more activities of daily life, she has a history of these impairments, and is regarded as disabled.

30. Plaintiff Carolynn Wood's physical impairments include, *inter alia*, idiopathic intracranial hypertension (IIH), osteoarthritis, cervical spondylosis, lumbar radiculopathy, chronic thoracic back pain, trochanteric bursitis and degenerative joint disease involving multiple joints. IIH, a neurological condition, is also called pseudotumor cerebi as it mimics a brain tumor. It causes Mrs. Wood to experience increased cerebrospinal fluid in the skull, putting pressure on the brain and optic nerve, causing dizziness, vision changes, and headaches. She has had both knees replaced.

Case 1:23-cv-01114-CCE-JLW    Document 24    Filed 03/12/24    Page 9 of 30

31.   The combination of Plaintiff Wood's impairments causes her to experience muscle weakness, fatigue, pain, and neurological fall-risk symptoms, thus substantially limiting one or more of her daily activities including walking, standing, carrying items, and performing self-care.

32.   Plaintiff relies on a service dog to assist her because of her impairments, including the animal's training to respond to the command "steady" when she is unstable on her feet. Defendants were aware of Plaintiff's need for her service dog as disclosed in Plaintiff's application to lease the Subject Property.

33.   Tommy Wood is a qualified person with a disability as he is an insulin-dependent diabetic who requires a strict dietary regimen. He has also suffered multiple heart attacks requiring stents and an internal defibrillator. Mr. Wood has had to rely significantly on a wheelchair since knee replacement surgery in August 2021.[3] These health conditions, some of which are obvious or otherwise known, substantially limit one or more of his daily activities including walking, standing, carrying items, and performing self-care.

34.   Both Plaintiff Wood and Tommy Wood are United States Military Veterans. Mrs. Wood is a 60-year-old combat Veteran, who served in the United States Army

_____

[3] At the time of the filing of this lawsuit, Tommy Wood's mental cognition has deteriorated and is now impaired.

for twenty-one years, including during Desert Storm/Shield. Mr. Wood is a 77-year-old Air Force Veteran who served during the Vietnam War.

## Subject Property

35.    Plaintiff and her husband leased the Subject Property, multi-level home located at 160 Rhyne Court, Clemmons, Davidson County, North Carolina, in February 2021. The Lease for the Subject Property was set to expire on June 16, 2022.

36.    At all times relevant to the lawsuit, the Subject Property was owned by FKH SFR C1, L.P. formerly known as Cerberus SFR Holdings II, L.P. and managed by FirstKey Homes, LLC and/or FirstKey Homes of North Carolina, LLC. Michelle Harne, Scott Sandman, and Chris Woodhouse were employed either by FirstKey Homes, LLC and/or FirstKey Homes of North Carolina, LLC.

37.    The lower level of the Subject Property is accessed from (i) an exterior door connected to a back patio without stairs, and/or (ii) from an interior foyer with stairs. The lower level has one large room and a half-bathroom with a sink and a toilet; there is no shower or tub on the lower level of the home. The lower level also does not have a kitchen.

38.     The upper level of the Subject Property can only be accessed via exterior or interior stairs. The kitchen, all three bedrooms, and the only bathrooms with a tub or

11

shower are on the upper level of the home. They were able to use the stairs and access this level at the start of their tenancy.

39.    Tommy Wood had knee replacement surgery in August of 2021, and was subsequently unable to use the stairs safely. He began to require a wheelchair to travel any significant distance and, even when he recovered partially from the surgery, could not carry anything on the stairs. Tommy Wood's mobility has continued to deteriorate and has not returned.

40.    After Tommy's knee replacement, Carolynn was at first the only one who could carry groceries and laundry up the stairs. Plaintiff Carolynn Wood's mobility also began to deteriorate further in September of 2021. As her mobility deteriorated, neither of them could safely carry items up the stairs and they became largely restricted to the ground floor.

41.    After the Woods lost the ability to safely navigate the stairs due to their disabilities, they were only able to access the ground floor of the home, which did not include the kitchen or a full bathroom with a shower or a tub. Therefore, their only ability to prepare and store food was with a hot plate, microwave, and an electric cooler and they could only bathe in a sink.

42.    On or about Friday November 26, 2021, Mrs. Wood helped her husband, Mr. Tommy Wood move in with his sister in Taylorsville, NC.

## The Woods' Reasonable Accommodation Request

43.     Provisions 3.5.1 and 3.5.2 of the Lease between Plaintiff and Defendants allowed for early termination without the imposition of the fee of $3,190 if such termination was allowed by local, state, or federal law.

44.     Plaintiff Carolynn Wood, on behalf of herself and Tommy Wood, wrote to Defendants requesting a reasonable accommodation to terminate their lease early, without fees or fines, due to their disabilities on December 13, 2021, and resubmitted it to Defendants on December 23, 2021, after she received no response.

45.     The Woods' disabilities and disability-related need for the accommodation were obvious and/or known to Defendants.

46.     Even so, the Plaintiff repeatedly offered to provide more information regarding their disabilities and the nexus to the requested accommodation. Defendants did not request additional information from Plaintiff and Defendants repeatedly refusing the Woods' offer of verification.

47.     As most of Woods' home was completely inaccessible to them, including the kitchen and only bathing facilities, their only reasonable choice was to move.

48.     The "nexus between the Woods' disabilities and the accommodation requested" was plain.

49.     The Woods were not able to use and enjoy their home in the same manner as a non-disabled person.

50.     The Subject Property could not be modified in any reasonable way to make it usable. The Woods had previously researched the cost of installing an elevator or stairlift for Mrs. Wood's father in a different home and received an estimate of over $6,000.00.

51.     Having heard no response to her reasonable accommodation request, Plaintiff Wood wrote Defendants again on December 27, 2021, renewing her requested accommodation, and addressing a potential elevator modification, explaining that it would be too expensive for any party.

**Defendants Refuse the Woods' Reasonable Accommodation Request**

52.     Defendant Harne, in her capacity as property manager and agent for the other Defendants, replied to the Woods' reasonable accommodation request via email on December 27, 2021. Defendant Harne stated their policy required 60-days' notice to terminate the lease and asserted "you would pay rent through your 60-day written notice to vacate plus a lease break fee of $31900.00. It is extremely expensive to break a lease."

53.     Mrs. Wood responded to Defendants on December 28, 2021, asking Respondents to respond to her reasonable accommodation request, and then renewing her request in greater detail. Respondents did not request any further information about the Woods' disabilities or the connection to the requested accommodation.

54.    On January 10, 2022, Defendant Harne emailed Plaintiff and clearly and emphatically denied the Woods' request: "Our Legal Department has determined that this request is not reasonable." Defendants did not assert any undue administrative and financial burden.

55.    In their January 10, 2022, denial of the Woods' reasonable accommodation request, Defendants proposed the Woods make a modification to the home: that the Woods could install a chair lift, at their own expense for construction and later removal, and subject to Defendants' approval of the design. Plaintiff Carolynn Wood had already addressed and rejected this potential modification due to the excessive expense in her December 27, 2021, letter.

56.    Plaintiff Wood appealed the denial of her reasonable accommodation request by writing on January 18, 2022, and included medical records supporting her disabilities. In this letter, she alerted defendants that she had fallen on the stairs on January 14, 2022, and included the records from her hospital visit following the fall.

57.    Defendants, through Michelle Harne, again denied the requested accommodation in writing on January 19, 2022: "Please do not send in medical records. Our Legal Team reviewed your request and it has been denied." Ms. Harne did not acknowledge that Ms. Wood had fallen down the stairs nor did she express any sympathy. Those two sentences were the entirety of her communication.

58.     Plaintiff Wood renewed the request again on January 26, 2022, including a letter from her doctor regarding her disabilities, which Defendants denied for the third time on January 27, 2022, through an email from Defendant Michelle Harne: "Legal has denied your request."

59.     Even though paragraphs 3.5.1 and 3.5.2 of the Lease, drafted by Defendants, specifically allowed Plaintiff to terminate her lease early when authorized by law, Defendants refused to honor this lease provision as well as the FHAs.

60.     That same day, January 27, 2022, Defendant Harne emailed Plaintiff from a separate email address, carolinanotices@firstkeyhomes.com, specifically seeking to collect the lease termination fee of $3,190.00.

61.     Defendant Scott Sandman began to seek to collect payment from Plaintiff's account prior on or before January 19, 2022. He contacted Plaintiff Wood via email on at least four occasions from January 19, 2022, through February 9, 2022, to collect on her alleged balance. Plaintiff Wood responded by renewing her request for a reasonable accommodation to allow her to vacate the property without penalty.

62.     Defendant Sandman, as an agent for Defendants FKH SFR C1, L.P.; FirstKey Homes, LLC; and FirstKey Homes of North Carolina, LLC, continued to contact Plaintiff seeking to collect the balance despite her requested accommodation, including seeking to collect the lease termination fee.

63.     On or about February 9, 2022, Mrs. Wood finished vacating the home and informed Defendants she had vacated via email the next day.

64.     On or about March 8, 2022, Defendant Chris Woodhouse emailed Plaintiff to collect the alleged debt, including the "early termination fee."

65.     Mrs. Wood responded to Defendant Woodhouse that same day, March 8, 2022, renewing her request for a reasonable accommodation to waive the lease termination fee and offering to pay the rent and utilities, pro-rated through the date she moved, February 9, 2022.

66.     Mr. Woodhouse replied on March 18, 2022, rejecting the requested accommodation, and specifically stating that the "Early Termination Fee" would not be waived, specifically because the "legal team" had approved her to install a stairlift.

67.     Defendants have continued to seek to collect an early termination or lease termination fee, even though the fee should have been waived as a reasonable accommodation.

68.     In addition to the individual emails from Defendants Harne, Sandman, and Woodhouse, Defendants sent multiple letters signed by FirstKey Homes seeking to collect the fee.

69. Since at least November 2022, Defendants have used a debt collection agency to continue to attempt to collect the unlawful fee by sending multiple letters to both Plaintiff Carolynn Wood and her husband Tommy Wood.

70. Upon information and belief, the Subject Property was re-rented to a new individual by June of 2022.

71. On or about January 4, 2022, Carolynn Wood submitted a pro se administrative fair housing complaint against Defendants with the North Carolina Human Relations Commission ("NCHRC") and the U.S. Department of Housing and Urban Development, alleging housing discrimination based on disability in violation of state and federal law. This complaint was deemed accepted on or about May 27, 2022. An amended complaint was executed on July 21, 2022.

72. Upon information and belief, Defendants did not assert an undue administrative and financial burden to granting the reasonable accommodation during the NCHRC's investigation.

73. On September 8, 2022, the NCHRC found there was not reasonable cause to find that discrimination had occurred.

74. Defendants denied the Woods' reasonable accommodation request repeatedly and in writing, refused Plaintiff's offer to provide additional information or medical documentation in support of their reasonable accommodation request, rejected medical documentation supporting information when it was provided, refused

18

Plaintiff's offer to discuss any alternative accommodations, and have continued to seek to collect the lease termination fee. Defendants did not assert any administrative and financial burden.

The Defendants violated the federal and North Carolina Fair Housing Acts by denying the Woods' reasonable accommodation request to terminate the lease early due to their disabilities, by imposing different terms and conditions, and by interfering with their fair housing rights. Plaintiff has suffered compensatory and punitive damages as a result.

## Defendants' Unlawful, Discriminatory Housing Practices

75.    In refusing to allow Plaintiff Carolynn Wood and her husband to terminate the lease agreement early without a fee or penalty due to the Subject Property no longer being accessible to them because of their respective disabilities, Defendants denied them a reasonable accommodation in violation of the FHA and North Carolina FHA, *see* 42 U.S.C. § 3604(f)(3)(B) and N.C. Gen. Stat. § 41A-4(f)(2).

76.    By suggesting an unreasonable, expensive, and previously rejected alternative to the reasonable accommodation requested by Plaintiff Carolynn Wood and her husband, and then refusing to engage in any interactive process regarding her request upon further inquiry, Defendants denied a reasonable accommodation in violation of the FHA and North Carolina FHA, *see* 42 U.S.C. § 3604(f)(3)(B) and N.C. Gen. Stat. § 41A-4(f)(2).

19

77. By stating, in response to Plaintiff Carolynn Wood's reasonable accommodation request, that she and her husband would still be responsible to pay for the remainder of the lease, and in seeking to collect the lease termination fee, Defendants not only denied Plaintiff's reasonable accommodation request in violation of the federal FHA and North Carolina FHA, *see* 42 U.S.C. § 3604(f)(3)(B) and N.C. Gen. Stat. § 41A-4(f)(2), but Defendants' denial and subsequent conduct also unlawfully interfered with Plaintiff Wood's exercise of her fair housing rights violation of the FHA and North Carolina FHA, *see* 42 U.S.C. § 3617 and N.C. Gen. Stat. § 41A-4(e).

78. In refusing to allow Plaintiff Carolynn Wood and her husband to terminate the lease agreement early due to the Subject Property no longer being accessible to them because of their respective disabilities, Defendants denied them housing in violation of the FHA and North Carolina FHA, *see* 42 U.S.C. § 3604(f)(1) and N.C. Gen. Stat. § 41A-4(a)(8).

79. In denying the reasonable accommodation requested by Plaintiff Carolynn Wood and her husband, Defendants also subjected them to different terms, conditions, or privileges relating to the rental of a dwelling because of Plaintiff's and her husband's respective disabilities in violation of the FHA and North Carolina FHA, *see* 42 U.S.C. § 3604(f)(2) and N.C. Gen. Stat. § 41A-4(a)(2).

20

80.     Based on these facts alleged in this Complaint, Defendants injured Plaintiff Carolynn Wood by committing, directly or through their agents, discriminatory housing practices including but not limited to:

a. Denying a reasonable accommodation request of tenant with a disability without any legal justification;

b. Depriving a person equal opportunity to use and enjoy her dwelling because of her disability;

c. Subjecting a person to discrimination because of disability that has the effect of imposing different terms, conditions, or privileges relating to the rental of a dwelling or denying or limiting service or facilities in connection with the rental of a dwelling;

d. Threatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the disability of such persons;

e. Retaliating against any person because that person has engaged in protected activity under the FHA or North Carolina FHA; and

f. Engaging in unlawful trade and deceptive practices or acts involving unlawful discriminatory housing practices, including but not limited to, refusing to allow Plaintiff to terminate her lease early when required by law and specifically authorized by the lease, and continuing to demand a lease termination fee even after Plaintiff notified Defendants that she

21

had fallen down the stairs in the Subject Property and gone to the hospital.

81.   Each defendant is directly liable for the foregoing unlawful discriminatory housing practices:

    a.  As a result of its own conduct;

    b.  For failing to take prompt action to correct and end a discriminatory or unlawful housing practice by its agent, given knowledge of the agent's unlawful and discriminatory conduct;

    c.  For failing to take prompt action to correct and end unlawful and discriminatory housing practices; or

    d.  For ratifying the unlawful or discriminatory housing practices committed by any other defendant.

82.   Defendants FKH SFR C1, L.P., formerly known as Cerberus SFR Holdings II, L.P., is vicariously liable for the unlawful conduct of its agents, Defendants FirstKey Homes, LLC, FirstKey Homes of North Carolina, LLC, Michelle Harne, Scott Sandman, and Chris Woodhouse.

83.   Defendants FirstKey Homes, LLC and FirstKey Homes of North Carolina, LLC are also vicariously liable for the unlawful conduct of its agents and/or employees, including Michelle Harne, Scott Sandman, and Chris Woodhouse.

## Injury

84. As a result of the unlawful conduct of each Defendant, Plaintiff Carolynn Wood suffered emotional distress, including humiliation, embarrassment, mental anguish, violation of her civil rights, and loss of dignity. Plaintiff also suffered damages due to the unlawful fee affecting her credit. Accordingly, Plaintiff is entitled to compensatory damages under the federal FHA, 42 U.S.C. § 3613(c)(1) and under the state law claims. Plaintiff is also entitled to treble damages for violations of the state law concerning unlawful unfair or deceptive acts or practices.

85. In committing the unlawful acts alleged in this complaint, each Defendant acted with reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff Carolynn Wood is entitled to punitive damages, which she seeks under the federal FHA, 42 U.S.C. § 3613(c)(1), only.

86. There is an actual controversy between the parties regarding duties under the federal fair housing law and state law. Accordingly, Plaintiff is entitled to declaratory relief under her federal and state law claims including, but not limited to, 42 U.S.C. § 3613(c)(1), 28 U.S.C. §§ 2201-2202, and Rule 57 of the Federal Rules of Civil Procedure. Unless enjoined, each Defendant will continue to engage in the discriminatory housing practices alleged in this Complaint. Plaintiff Carolynn Wood suffered irreparable injury from the acts of discrimination by each of the defendants. Plaintiff is suffering and will continue to suffer unless relief is provided

Case 1:23-cv-01114-CCE-JLW    Document 24    Filed 03/12/24    Page 23 of 30

by this Court. Further, it is likely that other disabled applicants or tenants of the defendants will suffer the same fate unless relief is provided by this Court to advance the public interest. Plaintiff Carolynn Wood has no adequate remedy at law. Accordingly, Plaintiff is entitled to injunctive relief under their federal and state law claims including, but not limited to, 42 U.S.C. § 3613(c)(1) and Rule 65 of the Federal Rules of Civil Procedure.

## CLAIMS

## FIRST CLAIM

(Violation of 42 U.S.C. §§ 3604(f)(1), (f)(2), (f)(3)(B), and 3617)

87.    Plaintiff Carolynn Wood realleges and incorporates by reference the above paragraphs.

88.    By the actions set forth above, each Defendant has directly, and/or through the acts of its agents:

     a.  Discriminated in the rental, or otherwise made unavailable or denied dwellings of any renter because of a disability, in violation of 42 U.S.C. § 3604(f)(1);

     b.  Discriminated in the terms, conditions or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, because of a disability of the renter, in violation of 42 U.S.C. § 3604(f)(2);

c.  Refused to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604 (f)(3)(B); and

d.  Coerced, intimidated, threatened, or interfered with the exercise or enjoyment of any right granted or protected by the FHA in violation of 42 U.S.C. § 3617.

89.  As a result of each Defendant's conduct, Plaintiff has been injured and is an "aggrieved person" as defined by 42 U.S.C. § 3602(i).

90.  The discriminatory housing practices of each Defendant were intentional, willful, or taken in reckless disregard of the federal protected rights of Plaintiff Carolynn Wood.

## SECOND CLAIM

(Violation of N.C. Gen. Stat. § 41A-4)

91.  Plaintiff Carolynn Wood realleges and incorporates by reference the above paragraphs.

92.  Each Defendant injured Plaintiff by committing, directly or through its agents, discriminatory housing practices in violation of the North Carolina FHA, N.C. Gen. Stat. §§ 41A-4(f)(2), 41A-4(a)(8), 41A-4(a)(2), 41A-4(a)(6) and 41A-4(e).

25

## THIRD CLAIM

### (Violation of N.C. Gen. Stat. § 75-1.1)

93.     Plaintiff Carolynn Wood realleges and incorporates by reference the above paragraphs.

94.     At all times relevant to this action, each Defendant, in the ordinary course of business as a lessor of residential rental property, engaged in acts or practices affecting commerce within the meaning of N.C. Gen. Stat. §75-1.1.

95.     The public policy of North Carolina mandates that landlords shall not discriminate against person in the leasing of a dwelling because of disability or handicap in violation of 42 U.S.C. § 3604(f) and N.C. Gen. Stat. § 41A-4(f)(2) and mandates that landlords shall not retaliate against tenants who seek to exercise their rights under the FHA in violation of 42 U.S.C. § 3617 and the North Carolina FHA in violation of N.C. Gen. Stat. § 41A-4(e).

96.     The actions of each Defendant are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, constitute an inequitable assertion of power and position against Plaintiff, and offend the established public policy of North Carolina in violation of N.C. Gen. Stat. §75-1.1.

97.     Each Defendant, directly and/or through an agent, committed these unfair, unethical, deceptive, and illegal practices in violation of N.C. Gen. Stat. § 75-1.1 and related protections under state common law and statutes.

98.   Plaintiff Carolynn Wood is entitled to treble her actual damages resulting from the unfair and deceptive trade practices of each Defendant pursuant to N.C. Gen. Stat. §75-16.

## FOURTH CLAIM

(Violation of N.C. Gen. Stat. § 75-50 et seq.)

99.   Plaintiff Carolynn Wood realleges and incorporates by reference the above paragraphs.

100.   Plaintiff is a "consumer" as defined in N.C. Gen. Stat. § 75-50(1).

101.   Defendants are each a "debt collector" as defined in N.C. Gen. Stat. § 75-50(3).

102.   The rent and any fees allegedly owed by Plaintiff to Defendants are "a debt" as defined in N.C. Gen. Stat. § 75-50(2).

103.   Defendants falsely represented the character, extent, or amount of Plaintiff's debt in violation of N.C. Gen. Stat. § 75-54(4) through multiple communications.

104.   Defendants attempted to collect a fee incidental to the Plaintiff's principal debt which they were not legally entitled to in violation of N.C. Gen. Stat. § 75-55(2) through multiple communications.

105.   Plaintiff is entitled to actual damages sustained by her as a result of Defendant's failure to comply with N.C. Gen. Stat. § 75-50 et seq. in an amount to be determined at trial.

27

106. Plaintiff is entitled to a statutory penalty of not less than $500.00 and not more than $4,000.00 for each instance of Plaintiff's unfair debt collection practices pursuant to N.C. Gen. Stat. § 75-56(b).

## DEMAND FOR JURY TRIAL

107. Plaintiff Carolynn Wood demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs Carolynn Wood prays for entry of a judgment against each Defendant that:

1. Awards compensatory damages under each claim alleged herein;

2. Awards treble her actual compensatory damages under N.C. Gen. Stat. §75-1.1 and N.C. Gen. Stat. §75-16.

3. Awards statutory damages for each of Defendants' attempts to collect a debt in violation of N.C. Gen. Stat. § 75-50 et seq.

4. Awards punitive damages under the federal Fair Housing Act only;

5. Declares that each Defendant has violated the federal Fair Housing Act and applicable North Carolina law;

6. Enjoins all unlawful practices complained about herein and imposes affirmative injunctive relief requiring each Defendant and its partners and agents to take affirmative steps to counteract and cure their unlawful and discriminatory practices;

28

7.     Awards reasonable attorneys' fees and costs; and,

8.     Awards any other relief deemed just by the Court.

Dated:  March 12, 2024.

Respectfully submitted,

LEGAL AID OF NORTH CAROLINA, INC.
FAIR HOUSING PROJECT
*Attorneys for Plaintiff*

*/s/ Peter H. Gilbert*
Peter H. Gilbert
2101 Angier Avenue., Ste 300
Durham, N.C. 27703
Telephone: (919) 226-5919
Fax: (919) 861-1887
peterg@legalaidnc.org
N.C. State Bar. No. 40415

*/s/ Kelly Anne Clarke*
Kelly Anne Clarke
2101 Angier Avenue., Ste 300
Durham, N.C. 27703
Telephone: (919) 865-3825
Fax: (919) 861-1887
kellyc@legalaidnc.org
N.C. State Bar. No. 28188

*/s/ Michael Manset*
Michael Manset
2101 Angier Avenue., Ste 300
Durham, N.C. 27703
Telephone: (919) 277-9021
Fax: (919) 861-1887
michaelm2@legalaidnc.org
N.C. State Bar. No. 55167

29

## CERTFICATE OF SERVICE

I hereby certify that on March 12, 2024, the foregoing Amended Complaint was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record:

John M. Moye (NC Bar No. 35463)
BARNES & THORNBURG LLP
3340 Peachtree Road, N.E., Suite
2900 Atlanta, Georgia 30326-1092
Tel: (404) 846-1693 Fax: (404) 264-
4033
JMoye@btlaw.com
*Local Civil Rule 83.1(d) Counsel for
Defendants*

Michael P. Palmer
(*By Special Appearance*)
BARNES & THORNBURG LLP
201 South Main Street, Suite 400
South Bend, IN 46601 Telephone:
(574) 237-1135 Facsimile: (574) 237-
1125
Michael.Palmer@btlaw.com

Dated: March 12, 2024.

*/s/ Peter H. Gilbert*
Peter H. Gilbert
Legal Aid of North Carolina
2101 Angier Avenue., Ste 300
Durham, N.C. 27703
Telephone: (919) 226-5919
Fax: (919) 861-1887
peterg@legalaidnc.org
N.C. State Bar. No. 40415

30