IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CAROLYNN WOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FKH SFR C1, L.P., f/k/a CERBERUS SFR | ) | Case No. 1:23-CV-1114 |
| HOLDINGS II, L.P.; FIRSTKEY HOMES, | ) | |
| LLC; FIRSTKEY HOMES OF NORTH | ) | |
| CAROLINA, LLC; MICHELLE HARNE; | ) | |
| SCOTT SANDMAN; AND CHRIS | ) | |
| WOODHOUSE, | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER TO AMENDED COMPLAINT AND JURY REQUEST

Defendants, FKH SFR C1, L.P. f/k/a Cerberus SFR Holdings II, L.P.,
FirstKey Homes, LLC, FirstKey Homes of North Carolina, LLC, Michelle Harne,
Scott Sandman, and Chris Woodhouse ("Defendants"), by and through their counsel,
for their Answer and Affirmative Defenses to Plaintiff's Amended Complaint, state
as follows:[1]

---

[1] Defendants note that, for ease of future reference, Plaintiff's Amended Complaint
allegations are set forth verbatim, with Defendants' responses following each
allegation.

1

## NATURE OF THE ACTION

1.      This is a civil action brought pursuant to the federal Fair Housing Act ("FHA") for monetary, declaratory, injunctive, and other relief arising from unlawful discrimination by Defendants against Plaintiff Carolynn Wood and her husband, Tommy Wood, both persons with a disability.  Defendants violated the FHA by refusing to make a reasonable accommodation to their rules, policies, practices, and/or services when such an accommodation is necessary to afford Plaintiff Carolynn Wood and her husband an equal opportunity to use and enjoy their dwelling.  Plaintiff Carolynn Wood also asserts the state law claims pursuant to the North Carolina Fair Housing Act, N.C. Gen. Stat. § 41A-1 *et seq.*, and for illegal unfair or deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1 *et seq.*

**ANSWER:**  Defendants admit Plaintiff purports to bring an action under the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, the North Carolina Fair Housing Act ("North Carolina FHA"), N.C. Gen. Stat. § 41A-1 *et seq.*, and the North Carolina Uniform Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 *et seq.* Further, Defendants admit Plaintiff alleges Defendants violated these laws by refusing to make a reasonable accommodation to FirstKey's rules, policies, practices, and/or services.   Defendants also admit Plaintiff seeks monetary, declaratory, injunctive, and other relief.  Plaintiff's allegation that she and her husband, Tommy Wood, are persons with a disability alleges a legal conclusion to

2

which no response is required but, nonetheless, Defendants are without knowledge or information sufficient to form a belief as to the truth of this allegation and therefore deny the same. Defendants deny Plaintiff's allegation that her request for an accommodation to FirstKey's rules, policies, practices, and/or services was either "reasonable" or "necessary" to afford Plaintiff and her husband an equal opportunity to use and enjoy their dwelling. Defendants deny they violated the referenced statutes, engaged in any of the alleged prohibited conduct, and all remaining allegations contained in Paragraph 1 of Plaintiff's Amended Complaint.

## JURISDICTION AND VENUE

2.      The Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 3613, because this lawsuit is brought under the FHA, 42 U.S.C. § 3601 *et seq*. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiff's state law claims because these claims relate to Plaintiff's federal law claim and arise out of a common nucleus of related facts, forming part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:** Defendants admit that jurisdiction is currently proper in this Court based on the allegations in Plaintiff's Complaint. Defendants deny any

3

remaining allegations or implications contained in the foregoing paragraph and deny they are liable to Plaintiff in any way.

3.      Venue is proper in the Middle District of North Carolina under 28 U.S.C. § 1391(b) because the claim arose in this judicial district.

**ANSWER:** Defendants admit that venue is currently proper in this Court based on the allegations in Plaintiff's Complaint.  Defendants deny any remaining allegations or implications contained in the foregoing paragraph and deny they are liable to Plaintiff in any way.

## PARTIES

4.      Plaintiff Carolynn Wood is currently a resident of Calhoun County, Alabama.  From February 2021 until February of 2022, she was a resident at the Subject Property located at 160 Rhyne Court, Clemmons, Davidson County, North Carolina.

**ANSWER:**  Defendants admit that from February 2021 through February of 2022, Plaintiff was a resident with her husband, Tommy Wood, at the "Subject Property" located at 160 Rhyne Court, Clemmons, Davidson County, North Carolina.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff is currently a resident of Davie

4

County, North Carolina and therefore deny the same. Defendants deny any remaining allegations in Paragraph 4 of the Amended Complaint.

5.    The Subject Property is considered a "dwelling" within the meaning of 42 U.S.C. § 3602(b).

**ANSWER:** Paragraph 5 alleges a legal conclusion to which no response is required. To the extent an answer may be required, Defendants admit the Subject Property is a "dwelling" within the meaning of 42 U.S.C. § 3602(b). Defendants deny any remaining allegations in Paragraph 5 of the Amended Complaint.

6.    Plaintiff Carolynn Wood is an individual with a disability[2], as defined by 42 U.S.C. § 3602 and N.C. Gen. Stat. § 41A-3(3a), that qualifies her for the protections of the federal Fair Housing Act and North Carolina Fair Housing Act. Mrs. Wood has a history of having these disabilities.

**ANSWER:** Paragraph 6 alleges a legal conclusion to which no response is required. To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation

---

[2] The term "disability" and "disabled" are used throughout this complaint and are understood to have the same meaning as "handicap" and "handicapped" in the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq*. and the State Fair Housing Act., N.C. Gen. Stat. § 41A-1 *et seq*.

5

that Plaintiff is an individual with a disability, as defined by 42 U.S.C. § 3602 and N.C. Gen. Stat. § 41A-3(3a), that she is entitled to protections under the FHA and the North Carolina FHA, and that she has a history of having certain alleged disabilities and therefore denies the same. Defendants deny any remaining allegations in Paragraph 6 of the Amended Complaint.

7.     Plaintiff's husband Tommy Wood is an individual with a disability, as defined by 42 U.S.C. § 3602 and N.C. Gen. Stat. § 41A-3(3a), that qualifies Plaintiff Carolynn Wood for the protections of the federal Fair Housing Act and North Carolina Fair Housing Act. Mr. Wood has a history of having these disabilities.

**ANSWER:** Paragraph 7 alleges a legal conclusion to which no response is required. To the extent an answer may be required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff's husband is an individual with a disability, as defined by 42 U.S.C. § 3602 and N.C. Gen. Stat. § 41A-3(3a), that he is entitled to protections under the FHA and the North Carolina FHA, and that he has a history of having certain alleged disabilities and therefore denies the same. Defendants deny any remaining allegations in Paragraph 7 of the Amended Complaint.

8.     At all times relevant herein, Plaintiff is an "aggrieved person" pursuant to 42 U.S.C. § 3602(i).

Case 1:23-cv-01114-CCE-JLW   Document 27   Filed 03/26/24   Page 6 of 59

**ANSWER:** Paragraph 8 alleges a legal conclusion to which no response is required. To the extent an answer may be required, Defendants admit Plaintiff is an "aggrieved person" pursuant to 42 U.S.C. § 3602(i) in that she claims to have been injured by a discriminatory housing practice. Defendants deny they violated the FHA, engaged in any of the alleged prohibited conduct, and all remaining allegations contained in Paragraph 8 of Plaintiff's Amended Complaint.

9.     Plaintiff Carolynn Wood and her husband Tommy Wood leased the Subject Property on or about February 17, 2021, from Defendant FirstKey Homes of North Carolina, LLC as the property manager and agent for the owner, Defendant FKH SFR Cl, L.P., formerly known as Cerberus SFR Holdings II, L.P.

**ANSWER:** Defendants admit the allegations in Paragraph 9 of the Amended Complaint.

10.     Cerberus SFR Holdings II, L.P. executed a deed on or about July 15, 2021, transferring ownership to Defendant FKH SFR C1, L.P. who currently owns the property.

**ANSWER:** Defendants admit the allegation in Paragraph 10 of the Amended Complaint.

7

11.    On information and belief, Cerberus SFR Holdings II, L.P. and Defendant FKH SFR C1, L.P. are the same corporation operating with a new name.

**ANSWER:** Defendants admit the allegations in Paragraph 11 of the Amended Complaint.

12.    On information and belief, "FKH SFR" is an acronym for "First Key Homes Single Family Residences."

**ANSWER:** Defendants admit the allegations in Paragraph 12 of the Amended Complaint.

13.    Defendant FirstKey Homes of North Carolina, LLC and/or Defendant FirstKey Homes, LLC, were hired by and acted as an agent of Defendant FKH SFR Cl, L.P. formerly known as Cerberus SFR Holdings II, L.P. to manage the Subject Property.

**ANSWER:** Defendants admit that Defendant FirstKey Homes of North Carolina, LLC was hired by and acted as an agent of Defendant FKH SFR C1, L.P. formerly known as Cerberus SFR Holdings II, L.P. to manage the Subject Property. Defendants deny any remaining allegations in Paragraph 13 of the Amended Complaint.

8

14.     Defendants Michelle Harne, Scott Sandman, and Chris Woodhouse were employed by Defendant FirstKey Homes, LLC and/or FirstKey Homes of North Carolina, LLC during the lease and participated in management of the Subject Property and related tenant accounts.

**<u>ANSWER:</u>** Defendants admit Defendants Michelle Harne, Scott Sandman, and Chris Woodhouse were employed by Defendant FirstKey Homes, LLC and participated in management of the Subject Property or related tenant accounts. Defendants deny any remaining allegations in Paragraph 14 of the Amended Complaint.

15.     Defendant FirstKey Homes, LLC, signed several pieces of correspondence to Plaintiff on behalf of Defendants, regarding Plaintiff's reasonable accommodation request.

**<u>ANSWER:</u>** Defendants admit that employees of FirstKey Homes, LLC signed several pieces of correspondence to Plaintiff regarding her reasonable accommodation request. Defendants deny any remaining allegations in Paragraph 15 of the Amended Complaint.

16.     Defendant FirstKey Homes of North Carolina, LLC is listed as the property manager on the lease.

9

**ANSWER:** Defendants admit the allegations in Paragraph 16 of the Amended Complaint.

17. On information and belief, Defendants own and/or manage hundreds of properties across the United States. As of the date of this complaint, dozens of homes were listed as currently available to rent on FirstKey's website in North Carolina alone.[3]

**ANSWER:** Defendants admit the allegations in Paragraph 17 of the Amended Complaint.

18. As further described below, each Defendant is directly, vicariously, jointly and severally liable for the misconduct of each Defendant, including for the injuries sustained by Plaintiff Carolynn Wood.

**ANSWER:** Defendants deny the allegations in Paragraph 18 of the Amended Complaint.

## STATUTORY AND REGULATORY BACKGROUND

19. In 1988, Congress passed the federal Fair Housing Amendments Act of 1988, which made it unlawful "[t]o discriminate in the sale or rental, or otherwise to

---

[3] https://www.firstkeyhomes.com/rental-homes/

make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(l). It is also unlawful "[t]o discriminate against any person in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2). Discrimination includes "a refusal to make reasonable accommodations in rules, polices, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

**ANSWER:** Paragraph 19 alleges a legal conclusion to which no response is required. To the extent an answer may be required, Defendants state that these sections of the FHA speak for themselves, and Defendants deny having engaged in any discrimination or violation of the FHA.

20. The North Carolina Fair Housing Act ("North Carolina FHA"), N.C. Gen. Stat. § 41A-1 *et seq*., continues to be certified by the United States Department of Housing and Urban Development ("HUD") as "substantially equivalent" to the federal FHA, and similarly prohibits discrimination because of handicap or disability and it also requires housing providers to make reasonable accommodations necessary to afford a person with a disability the equal opportunity to use and enjoy their housing. N.C. Gen. Stat. § 41A-4.

11

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that HUD certifies the North Carolina FHA as "substantially equivalent" to the FHA and therefore denies the same. The remainder of Paragraph 20 alleges a legal conclusion to which no response is required. To the extent an answer may be required, Defendants state that N.C. Gen. Stat. § 41A-4 speaks for itself, and Defendants deny having engaged in any discrimination or violation of the North Carolina FHA.

21. "It is beyond cavil that the manner in which a rental agreement can be terminated constitutes a term, condition, or privilege of the rental agreement itself." *Samuelson v. Mid-Atlantic Realty Co.*, 947 F. Supp. 756, 761 (D. Del. 1996).

**ANSWER:** Paragraph 21 alleges a legal conclusion to which no response is required. To the extent an answer may be required, Defendants state that the FHA, the North Carolina FHA and case law interpreting those statutes speak for themselves, and Defendants deny having engaged in any discrimination or violation of the FHA or North Carolina FHA.

22. Allowing a tenant to terminate their lease early without charging fees due to disability is a common reasonable accommodation. *See, e.g., Samuelson*, 947 F. Supp. at 761; *Hughes v. Bransfield*, 84 Va. Cir. 214 (Cir. Ct. 2012).

**ANSWER:** Paragraph 22 alleges a legal conclusion to which no response is required. To the extent an answer may be required, Defendants state that the FHA, the North Carolina FHA and case law interpreting those statutes speak for themselves. Further answering, Defendants deny allowing a tenant to terminate their lease early without charging fees due to a disability is a common reasonable accommodation, deny Plaintiff's request for a penalty-free, early lease termination constituted a "reasonable" or "necessary" accommodation under the FHA or North Carolina FHA, and deny having engaged in any discrimination or violation of the FHA or North Carolina FHA.

23. HUD prescribes a process for a landlord to consider a reasonable accommodation request. *See* HUD, *Information for Housing Providers, Landlords, and Property Managers, What Happens Once You Receive a Request for a Reasonable Accommodation or Reasonable Modification* (hereinafter "HUD Information to Housing Providers"), https://www.hud.gov/program_offices/fair_housing_equal_opp/reasonable_accom modations_and_modifications/information_for_housing_providers_landlords_prop erty_managers#processing-requests (last visited December 12, 2023).

**ANSWER:** Paragraph 23 alleges a legal conclusion to which no response is required. To the extent an answer may be required, Defendants state that HUD

Information to Housing Providers, the FHA, the North Carolina FHA, and case law interpreting those statutes speak for themselves. Further answering, Defendants deny Plaintiff's request for a penalty-free, early lease termination constituted a "reasonable" or "necessary" accommodation under the FHA or North Carolina FHA, and deny having engaged in any discrimination or violation of the FHA or North Carolina FHA.

24. "*Only* if housing providers, landlords, and property managers believe they cannot provide what an individual has asked for because it would be an undue administrative and financial burden or a fundamental alteration to their program, can [they] suggest alternative accommodations." *Id*. (*emphasis added*).

**ANSWER:** Paragraph 24 alleges a legal conclusion to which no response is required. To the extent an answer may be required, Defendants state that HUD Information to Housing Providers, the FHA, the North Carolina FHA, and case law interpreting those statutes speak for themselves. Further answering, Defendants deny Paragraph 23 is an accurate recitation of the law, deny Plaintiff's request for a penalty-free, early lease termination constituted a "reasonable" or "necessary" accommodation under the FHA or North Carolina FHA, and deny having engaged in any discrimination or violation of the FHA or North Carolina FHA.

25. Landlords "are required to talk with the requestor about the different options if [they] cannot provide the specific accommodation requested, this is called the 'interactive process.'" *Id*.

**ANSWER:** Paragraph 25 alleges a legal conclusion to which no response is required. To the extent an answer may be required, Defendants state that HUD Information to Housing Providers, the FHA, the North Carolina FHA, and case law interpreting those statutes speak for themselves. Further answering, Defendants deny only landlords are responsible for the "interactive process," deny any implication that landlords may only talk with a requestor about different options if they cannot provide the specific accommodation requested, deny Plaintiff's request for a penalty-free, early lease termination constituted a "reasonable" or "necessary" accommodation under the FHA or North Carolina FHA, and deny having engaged in any discrimination or violation of the FHA or North Carolina FHA.

26. The Joint Statement from HUD and the United States Department of Justice ("DOJ") on Reasonable Accommodations ("Joint Statement on Reasonable Accommodations") also makes clear that "a reasonable accommodation may be denied *if* providing the accommodation is not reasonable – i.e., if it would impose an undue financial and administrative burden or it would fundamentally alter the nature of the provider's operations." Only after the showing of that burden, that the

15

accommodation is not reasonable, does this Joint Statement contemplate the interactive process for alternative accommodations. (HUD-DOJ Joint Statement on Reasonable Accommodations, May 17, 2004, pp. 7-9' https://www.hud.gov/sites/documents/huddojstatement.pdf (last visited December 12, 2023) (*emphasis added*).

**ANSWER:** Paragraph 26 alleges a legal conclusion to which no response is required. To the extent an answer may be required, Defendants state that the Joint Statement on Reasonable Accommodations, the FHA, the North Carolina FHA, and case law interpreting those statutes speak for themselves. Further answering, Defendants deny Paragraph 27 is an accurate recitation of the law, deny Plaintiff's request for a penalty-free, early lease termination constituted a "reasonable" or "necessary" accommodation under the FHA or North Carolina FHA, and deny having engaged in any discrimination or violation of the FHA or North Carolina FHA.

27.    As further set out by HUD, "[i]ndividuals with disabilities are not required to accept an alternative if it will not work for them, and individuals with disabilities are in the best position to know what will and will not meet their specific disability-related needs."  HUD Information for Housing Providers; *see also*, Joint Statement on Reasonable Accommodations, p. 8 ("However, providers should be

16

aware that persons with disabilities typically have the most accurate knowledge about the functional limitations posed by their disability, and an individual is not obligated to accept an alternative accommodation suggested by the provider if she believes it will not meet her needs and her preferred accommodation is reasonable.").

**ANSWER:** Paragraph 27 alleges a legal conclusion to which no response is required. To the extent an answer may be required, Defendants state that HUD Information for Housing Providers, Joint Statement on Reasonable Accommodations, the FHA, the North Carolina FHA, and case law interpreting those statutes speak for themselves. Further answering, Defendants deny any implication that an individual with a disability may reject an alternative accommodation that is reasonable, deny Plaintiff's request for a penalty-free, early lease termination constituted a "reasonable" or "necessary" accommodation under the FHA or North Carolina FHA, and deny having engaged in any discrimination or violation of the FHA or North Carolina FHA.

## FACTUAL ALLEGATIONS

28. Plaintiff Carolynn Wood is a qualified person with a disability who has been deemed disabled by the Social Security Administration (SSA) and has a one hundred percent (100%) disability rating from the United States Department of Veterans Affairs (VA).

17

**ANSWER:** Plaintiff's allegation that she is a qualified person with a disability states a legal conclusion to which no response is required. Nonetheless, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 and therefore deny the same.

29.    Plaintiff Carolynn Wood suffers from physical impairments that substantially limit one or more activities of daily life, she has a history of these impairments, and is regarded as disabled.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 and therefore deny the same.

30.    Plaintiff Carolynn Wood's physical impairments include, *inter alia*, idiopathic intracranial hypertension (IIH), osteoarthritis, cervical spondylosis, lumbar radiculopathy, chronic thoracic back pain, trochanteric bursitis and degenerative joint disease involving multiple joints.  IIH, a neurological condition, is also called pseudotumor cerebi as it mimics a brain tumor.  It causes Mrs. Wood to experience increased cerebrospinal fluid in the skull, putting pressure on the brain and optic nerve, causing dizziness, vision changes, and headaches.  She has had both knees replaced.

18

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 and therefore deny the same.

31.     The combination of Plaintiff Wood's impairments causes her to experience muscle weakness, fatigue, pain, and neurological fall-risk symptoms, thus substantially limiting one or more of her daily activities including walking, standing, carrying items, and performing self-care.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 and therefore deny the same.

32.     Plaintiff relies on a service dog to assist her because of her impairments, including the animal's training to respond to the command "steady" when she is unstable on her feet.  Defendants were aware of Plaintiff's need for her service dog as disclosed in Plaintiff's application to lease the Subject Property.

**ANSWER:** Defendants admit FirstKey was aware of Plaintiff's alleged need for her service dog.  Defendants deny Plaintiff disclosed her dog as a "service animal" in her application to lease the Subject Property.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 of the Amended Complaint and therefore deny the same.

19

33.     Tommy Wood is a qualified person with a disability as he is an insulin-dependent diabetic who requires a strict dietary regimen.  He has also suffered multiple heart attacks requiring stents and an internal defibrillator.  Mr. Wood has had to rely significantly on a wheelchair since knee replacement surgery in August 2021.[4]  These health conditions, some of which are obvious or otherwise known, substantially limit one or more of his daily activities including walking, standing, carrying items, and performing self-care.

**ANSWER:** Plaintiff's allegation that her husband, Tommy Wood, is a qualified person with a disability states a legal conclusion to which no response is required. Nonetheless, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 and therefore deny the same.

34.     Both Plaintiff Wood and Tommy Wood are United States Military Veterans.  Mrs. Wood is a 60-year-old combat Veteran, who served in the United States Army for twenty-one years, including during Desert Storm/Shield.  Mr. Wood is a 77-year-old Air Force Veteran who served during the Vietnam War.

---

[4] At the time of the filing of this lawsuit, Tommy Wood's mental cognition has deteriorated and is now impaired.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 and therefore deny the same.

## SUBJECT PROPERTY

35.     Plaintiff and her husband leased the Subject Property, multi-level home located at 160 Rhyne Court, Clemmons, Davidson County, North Carolina, in February 2021. The Lease for the Subject Property was set to expire on June 16, 2022.

**ANSWER:** Defendants admit the allegations in Paragraph 35 of the Amended Complaint.

36.     At all times relevant to the lawsuit, the Subject Property was owned by FKH SFR C1, L.P. formerly known as Cerberus SFR Holdings II, L.P. and managed by FirstKey Homes, LLC and/or FirstKey Homes of North Carolina, LLC. Michelle Harne, Scott Sandman, and Chris Woodhouse were employed either by FirstKey Homes, LLC and/or FirstKey Homes of North Carolina, LLC.

**ANSWER:** Defendants admit that during Plaintiff's tenancy and currently, the Subject Property was owned by FKH SFR C1, L.P. formerly known as Cerberus SFR Holdings II, L.P. and managed by FirstKey Homes of North Carolina, LLC. Defendants further admit that Michelle Harne, Scott Sandman, and Chris

21

Woodhouse were employed either by FirstKey Homes, LLC or FirstKey Homes of North Carolina, LLC. Defendants deny any remaining allegations in Paragraph 36 of the Amended Complaint.

37.    The lower level of the Subject Property is accessed from (i) an exterior door connected to a back patio without stairs, and/or (ii) from an interior foyer with stairs. The lower level has one large room and a half-bathroom with a sink and a toilet; there is no shower or tub on the lower level of the home. The lower level also does not have a kitchen.

**ANSWER:** Defendants admit the allegations in Paragraph 37 of the Amended Complaint.

38.    The upper level of the Subject Property can only be accessed via exterior or interior stairs. The kitchen, all three bedrooms, and the only bathrooms with a tub or shower are on the upper level of the home. They were able to use the stairs and access this level at the start of their tenancy.

**ANSWER:** Defendants admit that without a modification, the upper level of the Subject Property can only be accessed via exterior or interior stairs. Defendants further admit that the kitchen, all three bedrooms, and the only bathrooms with a tub or shower are on the upper level of the home. Upon information and belief, Defendants admit that Plaintiff and her husband could use the stairs and access all

22

levels of the home at the start of their tenancy. Defendants are without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in Paragraph 38 of the Amended Complaint.

39.     Tommy Wood had knee replacement surgery in August of 2021, and was subsequently unable to use the stairs safely.  He began to require a wheelchair to travel any significant distance and, even when he recovered partially from the surgery, could not carry anything on the stairs.  Tommy Wood's mobility has continued to deteriorate and has not returned.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 and therefore deny the same.

40.     After Tommy's knee replacement, Carolynn was at first the only one who could carry groceries and laundry up the stairs.  Plaintiff Carolynn Wood's mobility also began to deteriorate further in September of 2021.  As her mobility deteriorated, neither of them could safely carry items up the stairs and they became largely restricted to the ground floor.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 and therefore deny the same.

41.     After the Woods lost the ability to safely navigate the stairs due to their disabilities, they were only able to access the ground floor of the home, which did not include the kitchen or a full bathroom with a shower or a tub.  Therefore, their only ability to prepare and store food was with a hot plate, microwave, and an electric cooler and they could only bathe in a sink.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 and therefore deny the same.

42.     On or about Friday November 26, 2021, Mrs. Wood helped her husband, Mr. Tommy Wood move in with his sister in Taylorsville, NC.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 and therefore deny the same.

**THE WOODS' REASONABLE ACCOMMODATION REQUEST**

43.     Provisions 3.5.1 and 3.5.2 of the Lease between Plaintiff and Defendants allowed for early termination without the imposition of the fee of $3,190 if such termination was allowed by local, state, or federal law.

**ANSWER:** Defendants admit the allegations in Paragraph 43 of the Amended Complaint.

44.     Plaintiff Carolynn Wood, on behalf of herself and Tommy Wood, wrote to Defendants requesting a reasonable accommodation to terminate their lease early, without fees or fines, due to their disabilities on December 13, 2021, and resubmitted it to Defendants on December 23, 2021, after she received no response.

**ANSWER:** Defendants admit that Plaintiff requested a reasonable accommodation to terminate her and her husband's lease early in writing on December 13, 2021 and resubmitted it to Defendants on December 23, 2021. Defendants deny receiving and not responding to the December 13, 2021 request. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 44 and therefore deny the same.

45.     The Woods' disabilities and disability-related need for the accommodation were obvious and/or known to Defendants.

**ANSWER:** Paragraph 45 alleges a legal conclusion to which no response is required. To the extent an answer may be required, Defendants deny the allegations in Paragraph 45.

46.    Even so, the Plaintiff repeatedly offered to provide more information regarding their disabilities and the nexus to the requested accommodation. Defendants did not request additional information from Plaintiff and Defendants repeatedly refusing the Woods' offer of verification.

**ANSWER:** Defendants admit that Plaintiff offered to provide more information regarding her and her husband's disabilities and the nexus to the requested accommodation and that Defendants did not request additional information from Plaintiff. Defendants deny any remaining allegations in Paragraph 46, including the inference that they caused any breakdown in the "interactive process," deny Plaintiff's request for a penalty-free, early lease termination constituted a "reasonable" or "necessary" accommodation under the FHA or North Carolina FHA, and deny having engaged in any discrimination or violation of the FHA or North Carolina FHA.

47.    As most of Woods' home was completely inaccessible to them, including the kitchen and only bathing facilities, their only reasonable choice was to move.

**ANSWER:** Defendants deny the allegations in Paragraph 47 of the Amended Complaint.

26

48.     The "nexus between the Woods' disabilities and the accommodation requested" was plain.

**ANSWER:** Defendants deny the allegation in Paragraph 48 of the Amended Complaint.

49.     The Woods were not able to use and enjoy their home in the same manner as a non-disabled person.

**ANSWER:** Defendants deny the allegations in Paragraph 49 of the Amended Complaint.

50.     The Subject Property could not be modified in any reasonable way to make it usable.  The Woods had previously researched the cost of installing an elevator or stairlift for Mrs. Wood's father in a different home and received an estimate of over $6,000.00.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff and her husband had previously researched the cost of installing an elevator or stair lift for Plaintiff's father in a different home and received an estimate of over $6,000.00 and therefore deny the same.  Defendants deny the Subject Property could not be modified in any reasonable way to make it usable and deny any remaining allegations in Paragraph 50.

51.     Having heard no response to her reasonable accommodation request, Plaintiff Wood wrote Defendants again on December 27, 2021, renewing her requested accommodation, and addressing a potential elevator modification, explaining that it would be too expensive for any party.

**ANSWER:** Defendants admit Plaintiff Wood wrote Defendants again on December 27, 2021, renewing her requested accommodation, and addressing a potential elevator modification, explaining that it would be too expensive for either party.  Defendants deny the remaining allegations in Paragraph 51 of the Amended Complaint.

## DEFENDANTS REFUSE THE WOODS' REASONABLE ACCOMMODATION REQUEST

52.     Defendant Harne, in her capacity as property manager and agent for the other Defendants, replied to the Woods' reasonable accommodation request via email on December 27, 2021.  Defendant Harne stated their policy required 60-days' notice to terminate the lease and asserted "you would pay rent through your 60-day written notice to vacate plus a lease break fee of $31900.00.  It is extremely expensive to break a lease."

**ANSWER:** Defendants admit Defendant Harne, in her capacity as property manager, replied to the Woods' reasonable accommodation request via email on December 27, 2021, stating that policy required 60 days' notice to terminate the

lease and asserted "you would pay rent through your 60 day written notice to vacate plus a lease break fee of $31900.00. It is extremely expensive to break a lease." Further answering, Defendants state Defendant Harne misstated the actual early termination fee, which was $3,190 – not $31,900. Defendants deny the remaining allegations of Paragraph 52 of the Amended Complaint.

53.     Mrs. Wood responded to Defendants on December 28, 2021, asking Respondents to respond to her reasonable accommodation request, and then renewing her request in greater detail. Respondents did not request any further information about the Woods' disabilities or the connection to the requested accommodation.

**ANSWER:** Defendants admit Plaintiff responded to Defendant Harne's email on December 28, 2021, and she asked for a response to her reasonable accommodation request and renewed her request in greater detail. Defendants admit that Defendant Harne did not request any further information about Plaintiff's or her husband's disabilities or the connection to the requested accommodation. Defendants deny the remaining allegations in Paragraph 53 of the Amended Complaint.

54.     On January 10, 2022, Defendant Harne emailed Plaintiff and clearly and emphatically denied the Woods' request:    "Our Legal Department has

29

determined that this request is not reasonable." Defendants did not assert any undue administrative and financial burden.

**ANSWER:** Defendants admit that on January 10, 2022, Defendant Harne emailed Plaintiff, in part stating: "Our Legal Department has determined that this request is not reasonable." Defendants admit Defendant Harne's January 10, 2022 email did not use the words undue administrative and financial burden. Defendants deny the remaining allegations in Paragraph 54 of the Amended Complaint.


55. In their January 10, 2022, denial of the Woods' reasonable accommodation request, Defendants proposed the Woods make a modification to the home: that the Woods could install a chair lift, at their own expense for construction and later removal, and subject to Defendants' approval of the design. Plaintiff Carolynn Wood had already addressed and rejected this potential modification due to the excessive expense in her December 27, 2021, letter.

**ANSWER:** Defendants admit that Defendant Harne's January 10, 2022 email proposed an alternative reasonable modification to allow Plaintiff and her husband full use and enjoyment of their home, namely that Plaintiff and her husband could install a stair lift, at their own expense for construction and later removal, and subject to FirstKey's approval of the design. Defendants deny Plaintiff had already raised and rejected this modification due to the excessive expense in her December

30

27, 2021 letter, deny that an "elevator" is the same as a stair lift, and deny the remaining allegations in Paragraph 55 of the Amended Complaint.

56.     Plaintiff Wood appealed the denial of her reasonable accommodation request by writing on January 18, 2022, and included medical records supporting her disabilities.  In this letter, she alerted defendants that she had fallen on the stairs on January 14, 2022, and included the records from her hospital visit following the fall.

**<u>ANSWER</u>**:  Defendants admit Plaintiff sent FirstKey a letter on January 18, 2022 labeled an appeal of the denial of her reasonable accommodation request, included medical records with that letter, and stated that she had fallen on the stairs on January 14, 2022.  Whether Plaintiff's medical conditions constitute a disability is a legal conclusion to which no response is required.  To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegation that she is disabled and therefore deny the same.

57.     Defendants, through Michelle Harne, again denied the requested accommodation in writing on January 19, 2022:  "Please do not send in medical records.  Our Legal Team reviewed your request and it has been denied."  Ms. Harne did not acknowledge that Ms. Wood had fallen down the stairs nor did she express any sympathy.  Those two sentences were the entirety of her communication.

**ANSWER:** Defendants admit Defendant Harne sent an email on January 19, 2022, stating: "Please do not send in medical records. Our Legal Team reviewed your request and it has been denied," and those two sentenced constituted the entirety of her written response. Defendants are without knowledge or information sufficient to form a belief as to the truth of Plaintiff's remaining allegations in Paragraph 57 and therefore deny the same.

58. Plaintiff Wood renewed the request again on January 26, 2022, including a letter from her doctor regarding her disabilities, which Defendants denied for the third time on January 27, 2022, through an email from Defendant Michelle Harne: "Legal has denied your request."

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 of the Amended Complaint and therefore deny the same.

59. Even though paragraphs 3.5.1 and 3.5.2 of the Lease, drafted by Defendants, specifically allowed Plaintiff to terminate her lease early when authorized by law, Defendants refused to honor this lease provision as well as the FHAs.

32

**ANSWER:** Defendants deny that either paragraphs 3.5.1 and 3.5.2 of the Lease or the FHAs allowed Plaintiff to terminate her lease early without paying the early termination fee. Defendants deny any remaining allegations in Paragraph 59.

60. That same day, January 27, 2022, Defendant Harne emailed Plaintiff from a separate email address, carolinanotices@firstkeyhomes.com, specifically seeking to collect the lease termination fee of $3,190.00.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 of the Amended Complaint and therefore deny the same.

61. Defendant Scott Sandman began to seek to collect payment from Plaintiff's account prior on or before January 19, 2022. He contacted Plaintiff Wood via email on at least four occasions from January 19, 2022, through February 9, 2022, to collect on her alleged balance. Plaintiff Wood responded by renewing her request for a reasonable accommodation to allow her to vacate the property without penalty.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 of the Amended Complaint and therefore deny the same.

33

62.     Defendant Sandman, as an agent for Defendants FKH SFR Cl, L.P.; FirstKey Homes, LLC; and FirstKey Homes of North Carolina, LLC, continued to contact Plaintiff seeking to collect the balance despite her requested accommodation, including seeking to collect the lease termination fee.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 of the Amended Complaint and therefore deny the same.

63.     On or about February 9, 2022, Mrs. Wood finished vacating the home and informed Defendants she had vacated via email the next day.

**ANSWER:** Defendants deny Plaintiff informed Defendants she had vacated via email on February 10, 222.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 of the Amended Complaint and therefore deny the same.

64.     On or about March 8, 2022, Defendant Chris Woodhouse emailed Plaintiff to collect the alleged debt, including the "early termination fee."

**ANSWER:** Defendants admit that on or about March 8, 2022, Defendant Chris Woodhouse sent Plaintiff a letter and statement itemizing her unpaid move-out charges of $4,635.16, which included charges for unpaid rent, utility charges, late fees, and an early termination fee of $3,190, and Defendants sought the payment

34

of those unpaid move-out charges after Plaintiff and her husband vacated the Subject Property. Defendants deny any remaining allegations in Paragraph 64 of the Amended Complaint.

65. Mrs. Wood responded to Defendant Woodhouse that same day, March 8, 2022, renewing her request for a reasonable accommodation to waive the lease termination fee and offering to pay the rent and utilities, pro-rated through the date she moved, February 9, 2022.

**ANSWER:** Defendants admit the allegation contained in Paragraph 65 of the Amended Complaint.

66. Mr. Woodhouse replied on March 18, 2022, rejecting the requested accommodation, and specifically stating that the "Early Termination Fee" would not be waived, specifically because the "legal team" had approved her to install a stairlift.

**ANSWER:** Defendants admit the allegations contained in Paragraph 66 of the Amended Complaint.

67. Defendants have continued to seek to collect an early termination or lease termination fee, even though the fee should have been waived as a reasonable accommodation.

35

**ANSWER:** Defendants deny the allegation contained in Paragraph 67 of the Amended Complaint.

68. In addition to the individual emails from Defendants Harne, Sandman, and Woodhouse, Defendants sent multiple letters signed by FirstKey Homes seeking to collect the fee.

**ANSWER:** Defendants deny the allegation contained in Paragraph 68 of the Amended Complaint.

69. Since at least November 2022, Defendants have used a debt collection agency to continue to attempt to collect the unlawful fee by sending multiple letters to both Plaintiff Carolynn Wood and her husband Tommy Wood.

**ANSWER:** Defendants deny the allegation in Paragraph 69 of the Amended Complaint.

70. Upon information and belief, the Subject Property was re-rented to a new individual by June of 2022.

**ANSWER:** Defendants deny the allegations in Paragraph 70 of the Amended Complaint.

71.     On or about January 4, 2022, Carolynn Wood submitted a pro se administrative fair housing complaint against Defendants with the North Carolina Human Relations Commission ("NCHRC") and the U.S. Department of Housing and Urban Development, alleging housing discrimination based on disability in violation of state and federal law.  This complaint was deemed accepted on or about May 27, 2022.  An amended complaint was executed on July 21, 2022.

**ANSWER:** Defendants admit that Plaintiff submitted an administrative fair housing complaint against some of the Defendants with the North Carolina Human Relations Commission ("NCHRC") and the U.S. Department of Housing and Urban Development, alleging housing discrimination based on disability in violation of federal law.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 71 of the Amended Complaint and therefore deny the same.


72.     Upon information and belief, Defendants did not assert an undue administrative and financial burden to granting the reasonable accommodation during the NCHRC's investigation.

**ANSWER:** Paragraph 72 alleges a legal conclusion to which no response is required.  To the extent an answer may be required, Defendants admit the position statement and answer responding to the administrative complaint did not use the

37

words undue administrative and financial burden. Defendants deny any remaining allegations in Paragraph 72 of the Amended Complaint.

73. On September 8, 2022, the NCHRC found there was not reasonable cause to find that discrimination had occurred.

**ANSWER:** Defendants admit the allegations in Paragraph 73 of the Amended Complaint.

74. Defendants denied the Woods' reasonable accommodation request repeatedly and in writing, refused Plaintiff's offer to provide additional information or medical documentation in support of their reasonable accommodation request, rejected medical documentation supporting information when it was provided, refused Plaintiff's offer to discuss any alternative accommodations, and have continued to seek to collect the lease termination fee. Defendants did not assert any administrative and financial burden.

**ANSWER:** Defendants admit the position statement and answer responding to the administrative complaint did not use the words undue administrative and financial burden. Defendants also admit Defendants FKH SFR C1, L.P. f/k/a Cerberus SFR Holdings II, L.P., FirstKey Homes, LLC, FirstKey Homes of North Carolina, LLC, and Michelle Harne refused Plaintiff's offer to provide additional information or medical documentation in support of her and her husband's

38

reasonable accommodation request.  Defendants also admit FirstKey continued to seek to collect the lease termination fee for some period of time after Plaintiff and her husband vacated the Subject Property.  Defendants deny the remaining allegations in Paragraph 74.

[Unnumbered Paragraph].  The Defendants violated the federal and North Carolina Fair Housing Acts by denying the Woods' reasonable accommodation request to terminate the lease early due to their disabilities, by imposing different terms and conditions, and by interfering with their fair housing rights.  Plaintiff has suffered compensatory and punitive damages as a result.

**ANSWER:** Defendants deny the allegations contained in this unnumbered Paragraph between numbered Paragraph 74 and numbered Paragraph 75 of the Amended Complaint.[5]

## DEFENDANTS' UNLAWFUL, DISCRIMINATORY HOUSING PRACTICES

75.    In refusing to allow Plaintiff Carolynn Wood and her husband to terminate the lease agreement early without a fee or penalty due to the Subject Property no longer being accessible to them because of their respective disabilities,

---

[5] This unnumbered paragraph of Plaintiff's Amended Complaint appears after numbered paragraph 74 and before numbered paragraph 75.

Defendants denied them a reasonable accommodation in violation of the FHA and North Carolina FHA, *see* 42 U.S.C. § 3604(f)(3)(B) and N.C. Gen. Stat. § 41A-4(f)(2).

**ANSWER:** Defendants deny the allegations contained in Paragraph 75 of the Amended Complaint.

76.   By suggesting an unreasonable, expensive, and previously rejected alternative to the reasonable accommodation requested by Plaintiff Carolynn Wood and her husband, and then refusing to engage in any interactive process regarding her request upon further inquiry, Defendants denied a reasonable accommodation in violation of the FHA and North Carolina FHA, *see* 42 U.S.C. § 3604(f)(3)(B) and N.C. Gen. Stat. § 41A-4(f)(2).

**ANSWER:** Defendants deny the allegations contained in Paragraph 76 of the Amended Complaint.

77.   By stating, in response to Plaintiff Carolynn Wood's reasonable accommodation request, that she and her husband would still be responsible to pay for the remainder of the lease, and in seeking to collect the lease termination fee, Defendants not only denied Plaintiff's reasonable accommodation request in violation of the federal FHA and North Carolina FHA, *see* 42 U.S.C. § 3604(f)(3)(B) and N.C. Gen. Stat. § 41A-4(f)(2), but Defendants' denial and subsequent conduct

40

also unlawfully interfered with Plaintiff Wood's exercise of her fair housing rights violation of the FHA and North Carolina FHA, *see* 42 U.S.C. § 3617 and N.C. Gen. Stat. § 41A-4(e).

**ANSWER:** Defendants deny the allegations contained in Paragraph 77 of the Amended Complaint.

78.     In refusing to allow Plaintiff Carolynn Wood and her husband to terminate the lease agreement early due to the Subject Property no longer being accessible to them because of their respective disabilities, Defendants denied them housing in violation of the FHA and North Carolina FHA, *see* 42 U.S.C. § 3604(f)(1) and N.C. Gen. Stat. § 41A-4(a)(8).

**ANSWER:** Defendants deny the allegations contained in Paragraph 78 of the Amended Complaint.

79.     In denying the reasonable accommodation requested by Plaintiff Carolynn Wood and her husband, Defendants also subjected them to different terms, conditions, or privileges relating to the rental of a dwelling because of Plaintiff's and her husband's respective disabilities in violation of the FHA and North Carolina FHA, *see* 42 U.S.C. § 3604(f)(2) and N.C. Gen. Stat. § 41A-4(a)(2).

**ANSWER:** Defendants deny the allegations contained in Paragraph 79 of the Amended Complaint.

41

80.     Based on these facts alleged in this Complaint, Defendants injured Plaintiff Carolynn Wood by committing, directly or through their agents, discriminatory housing practices including but not limited to:

a.     Denying a reasonable accommodation request of tenant with a disability without any legal justification;

b.     Depriving a person equal opportunity to use and enjoy her dwelling because of her disability;

c.     Subjecting a person to discrimination because of disability that has the effect of imposing different terms, conditions, or privileges relating to the rental of a dwelling or denying or limiting service or facilities in connection with the rental of a dwelling;

d.     Threatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the disability of such persons;

e.     Retaliating against any person because that person has engaged in protected activity under the FHA or North Carolina FHA; and

f.     Engaging in unlawful trade and deceptive practices or acts involving unlawful discriminatory housing practices, including but not limited to, refusing to allow Plaintiff to terminate her

42

lease early when required by law and specifically authorized by the lease, and continuing to demand a lease termination fee even after Plaintiff notified Defendants that she had fallen down the stairs in the Subject Property and gone to the hospital.

**ANSWER:** Defendants deny the allegations contained in Paragraph 80 of the Amended Complaint.

81. Each defendant is directly liable for the foregoing unlawful discriminatory housing practices:

    a.    As a result of its own conduct;

    b.    For failing to take prompt action to correct and end a discriminatory or unlawful housing practice by its agent, given knowledge of the agent's unlawful and discriminatory conduct;

    c.    For failing to take prompt action to correct and end unlawful and discriminatory housing practices; or

    d.    For ratifying the unlawful or discriminatory housing practices committed by any other defendant.

**ANSWER:** Defendants deny the allegations contained in Paragraph 81 of the Amended Complaint.

82.     Defendants FKH SFR Cl, L.P., formerly known as Cerberus SFR Holdings II, L.P., is vicariously liable for the unlawful conduct of its agents, Defendants FirstKey Homes, LLC, FirstKey Homes of North Carolina, LLC, Michelle Harne, Scott Sandman, and Chris Woodhouse.

**ANSWER:** Defendants deny the allegations contained in Paragraph 82 of the Amended Complaint.

83.     Defendants FirstKey Homes, LLC and FirstKey Homes of North Carolina, LLC are also vicariously liable for the unlawful conduct of its agents and/or employees, including Michelle Harne, Scott Sandman, and Chris Woodhouse.

**ANSWER:** Defendants deny the allegations contained in Paragraph 83 of the Amended Complaint.

## INJURY

84.     As a result of the unlawful conduct of each Defendant, Plaintiff Carolynn Wood suffered emotional distress, including humiliation, embarrassment, mental anguish, violation of her civil rights, and loss of dignity. Plaintiff also suffered damages due to the unlawful fee affecting her credit. Accordingly, Plaintiff is entitled to compensatory damages under the federal FHA, 42 U.S.C. § 3613(c)(l)

and under the state law claims. Plaintiff is also entitled to treble damages for violations of the state law concerning unlawful unfair or deceptive acts or practices.

**ANSWER:** Defendants deny the allegations contained in Paragraph 84 of the Amended Complaint.

85. In committing the unlawful acts alleged in this complaint, each Defendant acted with reckless disregard of Plaintiff's federally protected rights. Accordingly, Plaintiff Carolynn Wood is entitled to punitive damages, which she seeks under the federal FHA, 42 U.S.C. § 3613(c)(l), only.

**ANSWER:** Defendants deny the allegations contained in Paragraph 85 of the Amended Complaint.

86. There is an actual controversy between the parties regarding duties under the federal fair housing law and state law. Accordingly, Plaintiff is entitled to declaratory relief under her federal and state law claims including, but not limited to, 42 U.S.C. § 3613(c)(l), 28 U.S.C. §§ 2201-2202, and Rule 57 of the Federal Rules of Civil Procedure. Unless enjoined, each Defendant will continue to engage in the discriminatory housing practices alleged in this Complaint. Plaintiff Carolynn Wood suffered irreparable injury from the acts of discrimination by each of the defendants. Plaintiff is suffering and will continue to suffer unless relief is provided by this Court. Further, it is likely that other disabled applicants or tenants of the

45

defendants will suffer the same fate unless relief is provided by this Court to advance the public interest. Plaintiff Carolynn Wood has no adequate remedy at law. Accordingly, Plaintiff is entitled to injunctive relief under their federal and state law claims including, but not limited to, 42 U.S.C. § 3613(c)(l) and Rule 65 of the Federal Rules of Civil Procedure.

**ANSWER:** Defendants deny the allegations contained in Paragraph 86 of the Amended Complaint.

## CLAIMS

## FIRST CLAIM

(Violation of 42 U.S.C. §§ 3604(f)(1), (f)(2), (f)(3)(B), and 3617)

87.    Plaintiff Carolynn Wood realleges and incorporates by reference the above paragraphs.

**ANSWER:** Defendants reallege and incorporate by reference their answers to the above paragraphs.

88.    By the actions set forth above, each Defendant has directly, and/or through the acts of its agents:

      a.    Discriminated in the rental, or otherwise made unavailable or denied dwellings of any renter because of a disability, in violation of 42 U.S.C. § 3604(f)(1);

46

b.　Discriminated in the terms, conditions or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, because of a disability of the renter, in violation of 42 U.S.C. § 3604(f)(2);

c.　Refused to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604 (f)(3)(B); and

d.　Coerced, intimidated, threatened, or interfered with the exercise or enjoyment of any right granted or protected by the FHA in violation of 42 U.S.C. § 3617.

**ANSWER:**　Defendants deny the allegations contained in Paragraph 88 of the Amended Complaint.

89.　As a result of each Defendant's conduct, Plaintiff has been injured and is an "aggrieved person" as defined by 42 U.S.C. § 3602(i).

**ANSWER:**　Defendants deny the allegations contained in Paragraph 89 of the Amended Complaint.

47

90.     The discriminatory housing practices of each Defendant were intentional, willful, or taken in reckless disregard of the federal protected rights of Plaintiff Carolynn Wood.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 90 of the Amended Complaint.


## SECOND CLAIM

(Violation of N.C. Gen. Stat. § 41A-4)

91.     Plaintiff Carolynn Wood realleges and incorporates by reference the above paragraphs.

**ANSWER:** Defendants reallege and incorporate by reference their answers to the above paragraphs.


92.     Each Defendant injured Plaintiff by committing, directly or through its agents, discriminatory housing practices in violation of the North Carolina FHA, N.C. Gen. Stat. §§ 41A-4(f)(2), 41A-4(a)(8), 41A-4(a)(2), 41A-4(a)(6) and 41A-4(e).

**ANSWER:**  Defendants deny the allegations contained in Paragraph 92 of the Amended Complaint.

## THIRD CLAIM

(Violation of N.C. Gen. Stat. § 75-1.1)

93.    Plaintiff Carolynn Wood realleges and incorporates by reference the above paragraphs.

**ANSWER:** Defendants reallege and incorporate by reference their answers to the above paragraphs.


94.    At all times relevant to this action, each Defendant, in the ordinary course of business as a lessor of residential rental property, engaged in acts or practices affecting commerce within the meaning of N.C. Gen. Stat. §75-1.1.

**ANSWER:** Paragraph 94 alleges a legal conclusion to which no response is required.  To the extent an answer may be required, Defendants admit Defendants engaged in acts or practices affecting commerce within the meaning of N.C. Gen. Stat. § 75 1.1.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 94 and therefore deny the same.


95.    The public policy of North Carolina mandates that landlords shall not discriminate against person in the leasing of a dwelling because of disability or handicap in violation of 42 U.S.C. § 3604(f) and N.C. Gen. Stat. § 41A-4(f)(2) and mandates that landlords shall not retaliate against tenants who seek to exercise their

49

rights under the FHA in violation of 42 U.S.C. § 3617 and the North Carolina FHA in violation of N.C. Gen. Stat. § 41A-4(e).

**ANSWER:** Paragraph 95 alleges a legal conclusion to which no response is required. To the extent an answer may be required, Defendants state that the FHA, the North Carolina FHA and case law interpreting those statutes speak for themselves,.

96. The actions of each Defendant are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, constitute an inequitable assertion of power and position against Plaintiff, and offend the established public policy of North Carolina in violation of N.C. Gen. Stat. §75-1.1.

**ANSWER:** Defendants deny the allegations contained in Paragraph 96 of the Amended Complaint.

97. Each Defendant, directly and/or through an agent, committed these unfair, unethical, deceptive, and illegal practices in violation of N.C. Gen. Stat. § 75-1.1 and related protections under state common law and statutes.

**ANSWER:** Defendants deny the allegations contained in Paragraph 97 of the Amended Complaint.

98.    Plaintiff Carolynn Wood is entitled to treble her actual damages resulting from the unfair and deceptive trade practices of each Defendant pursuant to N.C. Gen. Stat. §75-16.

**ANSWER:**  Defendants deny the allegations contained in Paragraph 98 of the Amended Complaint.


## FOURTH CLAIM

(Violation of N.C. Gen. Stat. § 75-50 et seq.)

99.    Plaintiff Carolynn Wood realleges and incorporates by reference the above paragraphs.

**ANSWER:**  Defendants reallege and incorporate by reference their answers to the above paragraphs.


100.    Plaintiff is a "consumer" as defined in N.C. Gen. Stat. § 75-50(1).

**ANSWER:**  Paragraph 100 alleges a legal conclusion to which no response is required.  To the extent an answer may be required, Defendants state that the North Carolina Debt Collection Act and case law interpreting that statute speak for themselves.


101.    Defendants are each a "debt collector" as defined in N.C. Gen. Stat. § 75-50(3).

51

**ANSWER:** Paragraph 101 alleges a legal conclusion to which no response is required. To the extent an answer may be required, Defendants state that the North Carolina Debt Collection Act and case law interpreting that statute speak for themselves.

102. The rent and any fees allegedly owed by Plaintiff to Defendants are "a debt" as defined in N.C. Gen. Stat. § 75-50(2).

**ANSWER:** Paragraph 102 alleges a legal conclusion to which no response is required. To the extent an answer may be required, Defendants state that the North Carolina Debt Collection Act and case law interpreting that statute speak for themselves.

103. Defendants falsely represented the character, extent, or amount of Plaintiff's debt in violation of N.C. Gen. Stat. § 75-54(4) through multiple communications.

**ANSWER:** Defendants deny the allegations contained in Paragraph 103 of the Amended Complaint.

104. Defendants attempted to collect a fee incidental to the Plaintiff's principal debt which they were not legally entitled to in violation of N.C. Gen. Stat. § 75-55(2) through multiple communications.

**ANSWER:** Defendants deny the allegations contained in Paragraph 104 of the Amended Complaint.

105.   Plaintiff is entitled to actual damages sustained by her as a result of Defendant's failure to comply with N.C. Gen. Stat. § 75-50 et seq. in an amount to be determined at trial.

**ANSWER:** Defendants deny the allegations contained in Paragraph 105 of the Amended Complaint.

106.   Plaintiff is entitled to a statutory penalty of not less than $500.00 and not more than $4,000.00 for each instance of Plaintiff's unfair debt collection practices pursuant to N.C. Gen. Stat. § 75-56(b).

**ANSWER:** Defendants deny the allegations contained in Paragraph 106 of the Amended Complaint.

## DEMAND FOR JURY TRIAL

107.   Plaintiff Carolynn Wood demands a jury trial for all issues so triable.

**ANSWER:** Defendants admit Plaintiff has requested a jury trial in this action.   However, Defendants specifically object to a jury determination of any equitable issues in this action or any other issues not triable by a jury.  Defendants reserve the right to have all equitable matters decided by the Court.

53

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs Carolynn Wood prays for entry of a judgment against each Defendant that:

1.     Awards compensatory damages under each claim alleged herein;

2.     Awards treble her actual compensatory damages under N.C. Gen. Stat. §75-1.1 and N.C. Gen. Stat. §75-16.

3.     Awards statutory damages for each of Defendants' attempts to collect a debt in violation of N.C. Gen. Stat. § 75-50 et seq.

4.     Awards punitive damages under the federal Fair Housing Act only;

5.     Declares that each Defendant has violated the federal Fair Housing Act and applicable North Carolina law;

6.     Enjoins all unlawful practices complained about herein and imposes affirmative injunctive relief requiring each Defendant and its partners and agents to take affirmative steps to counteract and cure their unlawful and discriminatory practices;

7.     Awards reasonable attorneys' fees and costs; and,

8.     Awards any other relief deemed just by the Court.

**ANSWER:** Defendants deny that Plaintiff is entitled to relief.

54

## DEFENDANTS' GENERAL DENIAL

To the extent Defendants have failed to specifically respond to any allegation by Plaintiff in her Amended Complaint, Defendants hereby deny the same and deny liability.

## AFFIRMATIVE DEFENSES

For their defenses, and subject to a reasonable opportunity for further investigation and to conduct discovery, Defendants respectfully state:[6]

1.     Plaintiff lacks standing to bring this action because she has not suffered a "concrete injury in fact under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

2.     At the very least, Plaintiff lacks standing to seek equitable relief because she is not currently a tenant of Defendants and was not a tenant of Defendants when she filed this lawsuit. Plaintiff thus does not suffer an existing injury, which is fatal to her claim for injunctive relief: "[B]efore a court may grant … injunctive relief, the plaintiff must separately establish a threat of 'real and immediate,' as opposed to 'conjectural or hypothetical,' future injury." *Williams v.*

---

[6] Some of the arguments listed below concern jurisdictional defects and are thus not technically affirmative defenses that must be raised in an answer; Defendants nevertheless raise them here for the convenience of the Court.

55

*Reckitt Benckiser LLC*, 65 F.4th 1243, 1253 (11th Cir. 2023) (emphasis added; quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 105 (1983)).

3.      Some or all of Plaintiff's claims may be barred by the applicable statutes of limitation.

4.      Some or all of Plaintiff's claims may be barred by the doctrine of after-acquired evidence.

5.      Plaintiff failed to mitigate her damages, as evidenced by – for example – her failure to consider the alternative reasonable modification proposed to provide her full access, use and enjoyment of the Subject Property or to engage in the interactive process after that alternative reasonable modification was proposed. Rather, Plaintiff simply insisted on the acceptance of her requested accommodation.

6.      Plaintiff's claims for damages are barred or limited by the FHA, the North Carolina FHA, the UDTPA, the U.S. Constitution, and the North Carolina Constitution.

7.      Plaintiff's requests for punitive and/or treble damages are barred by Defendants' good faith efforts to comply with all applicable laws and regulations.

8.      Upon information and belief, Plaintiff's claims are barred, in whole or in party, by the doctrines of accord and satisfaction, release, waiver, estoppel and/or laches.

9.      Plaintiff's claims are barred, in whole or in part, because at all relevant times, Defendants' decisions and actions were motivated by lawful, legitimate, non-discriminatory factors.

10.     Defendants reserve the right to amend its Defenses as the course of investigation and discovery warrants.

WHEREFORE, Defendants respectfully request that the Court enter judgment in favor of Defendants and against Plaintiff, that Plaintiff take nothing by way of her Amended Complaint, that costs and attorney's fees be assessed against Plaintiff, and that Defendants be awarded all appropriate relief.

Date:  March 26, 2024

Respectfully submitted

BARNES & THORNBURG LLP

/s/John M. Moye
John M. Moye (NC Bar No. 35463)
3340 Peachtree Rd. N.E., Ste. 2900
Atlanta, GA 30326-1092
Tel: (404) 846-1693
Fax: (404) 264-4033
JMoye@btlaw.com

*Local Civil Rule 83.1(d) Counsel for Defendants*

Michael P. Palmer (*by Special Appearance*)
201 S. Main St., Suite 400
South Bend, IN 46601-2130

57

Tel: (574) 237-1135
Fax: (574) 237-1125
Michael.Palmer@btlaw.com

*Counsel for Defendants FKH SFR C1,*
*L.P., f/k/a Cerberus SFR Holdings II,*
*L.P.; FirstKey Homes, LLC; FirstKey*
*Homes of North Carolina, LLC;*
*Michelle Harne; Scott Sandman; and*
*Chris Woodhouse*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3, I hereby certify that the foregoing Answer to Amended Complaint complies with the word limit set forth in Local Rule 7.3(d)(1).

*/s/John M. Moye*
John M. Moye (NC Bar No. 35463)
BARNES & THORNBURG LLP
3340 Peachtree Rd. N.E., Ste. 2900
Atlanta, GA 30326-1092
Tel: (404) 846-1693
Fax: (404) 264-4033
JMoye@btlaw.com

*Local Civil Rule 83.1(d) Counsel for*
*Defendants*

58

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

Peter H. Gilbert — peterg@legalaidnc.org
Kelly Anne Clarke — kellyc@legalaidnc.org
Michael Manset — michaelm2@legalaidnc.org
LEGAL AID OF NORTH CAROLINA, INC.
FAIR HOUSING PROJECT
2101 Angier Avenue, Suite 300
Durham, NC 27703

*/s/John M. Moye*
John M. Moye

DMS 42456094.